(No. 85246.—

RIVER PARK, INC., *et al.*, Appellees, v. THE CITY OF HIGHLAND PARK, Appellant.

*Opinion filed November 19, 1998.*

William R. Quinlan, Michael I. Rothstein, David M. Jenkins, Jean M. Prendergast and Gino L. DiVito, of Quinlan & Crisham, Ltd., of Chicago, and John J. Zimmermann, Corporation Counsel, of Highland Park, for appellant.

Margaret Morrison Borcia and Donald T. Morrison, of Morrison & Morrison, of Waukegan, for appellees.

Roger Huebner, of Springfield, for *amicus curiae* Illinois Municipal League.

Brian L. Crowe, Corporation Counsel, of Chicago (Lawrence Rosenthal and Benna Ruth Solomon, of counsel), for *amicus curiae* City of Chicago.

Richard A. Devine, State's Attorney, of Chicago (Patricia M. Shymanski and Peter D. Fischer, Assistant State's Attorneys, of counsel), for *amicus curiae* Cook County.

JUSTICE. McMORROW delivered the opinion of the court:

This case arises from the efforts of plaintiffs River Park, Inc., Spatz & Company, and Country Club Estates, Ltd., to develop a parcel of real estate located within defendant City of Highland Park. After defendant failed to approve their plan to develop the property and their request for rezoning, plaintiffs sought relief under 42 U.S.C. § 1983 (1994) by filing a complaint against defendant in federal court. Following the dismissal of their federal cause of action, plaintiffs asserted various violations of state law in an amended complaint filed against defendant in the circuit court of Lake County. The circuit court dismissed this complaint pursuant to defendant's motion to dismiss under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1996)). The circuit court found that (1) the dismissal of plaintiffs' federal complaint barred their state claims under the doctrine of *res judicata*, and (2) plaintiffs' state claims were also barred by the one-year statute of limitations contained in section 8—101 of the Local Governmental and Governmental Employees Tort Immunity Act (745

ILCS 10/8—101 (West 1996)). The appellate court affirmed the circuit court's dismissal of plaintiffs' claim for tortious interference with business expectancy, but reversed its decision to dismiss plaintiffs' claims for breach of implied contract and abuse of governmental power and remanded the cause for further proceedings on these counts. 295 Ill. App. 3d 90. We granted defendant's petition for leave to appeal. 166 Ill. 2d R. 315. We reverse in part the judgment of the appellate court on the basis that plaintiffs' state claims were barred by the doctrine of *res judicata.*

## BACKGROUND

According to the allegations of plaintiffs' amended complaint, which we take as true for purposes of our review of the rulings on defendant's motion to dismiss (see *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 325 (1995)), River Park, Inc. (River Park), had an ownership interest in a 162-acre piece of land in the City of Highland Park known as the Highland Park Country Club (Country Club). Plaintiff Spatz & Company (Spatz) was a builder and had purchased the capital stock of River Park. Spatz's purchase of the capital stock was financed in part by a loan from La Salle National Bank of Chicago (La Salle). The loan was secured by a mortgage on the Country Club property. Plaintiff Country Club Estates (CCE) was a limited partnership and purchased a portion of the Country Club property from River Park in 1991.

In July 1988, Spatz petitioned defendant on behalf of River Park to obtain approval for its plans to develop the Country Club property. In the petition, Spatz requested that defendant change the zoning classification of one portion of this property from R-1 to R-4. The petition also included a request for approval of a planned residential development on the property.

Between April 1988 and October 1989, Spatz appeared at numerous hearings before the City of Highland

Park plan commission. While, Spatz's petition was pending before the commission, a city council member, Raymond Geraci, formed a citizen's group named "Save the Open Space," the purpose of which was to encourage defendant to purchase the property in order to prevent Spatz's planned development. Geraci also proposed at city council meetings that defendant purchase the property in order to prevent Spatz's development. Without Spatz's knowledge, the city council ordered studies to assess the economic feasibility of defendant's purchase of the property.

On November 14, 1989, the commission approved the zoning change Spatz had proposed. The commission also approved the planned development, with certain modifications. On November 22, 1989, the commission provided the city council with an unconditional recommendation for approval of the zoning change and the planned development.

Between November 1989 and January 22, 1990, Spatz appeared before the city council three times to discuss the commission's recommendation. During this time, the city council received the results of the feasibility studies in executive session. The city council did not, however, communicate to Spatz that it was interested in purchasing the property. On January 22, 1990, the city council adopted the commission's zoning recommendation and approved the preliminary development plan.

For Spatz to obtain final approval, defendant's zoning ordinance required it to provide the commission and the city council with final engineering plans and a final development plan that conformed with the preliminary plan. In addition, Spatz was required by defendant's zoning ordinance to obtain the city engineer's verification that the engineering plans complied with applicable statutes and ordinances. According to the ordinance, if a developer failed to receive the city engineer's approval of

the engineering plans within one year of preliminary plat approval, the development plan would be deemed withdrawn.

In April 1990, Spatz submitted the final engineering plans to the city engineering department. The city engineer refused Spatz's requests to review or discuss the plans until October 5, 1990. At that time, defendant's engineers and Spatz's engineers agreed that, with certain modifications and corrections, 95% of the engineering plans were complete and satisfied all of defendant's requirements. Defendant's engineers agreed to review the remaining 5% of the plans by December 1, 1990, and provide criteria for completion of those plans.

Spatz made the necessary corrections for the 95% of the plans already reviewed by defendant's engineers, but the city engineer refused to review either the corrected plans or the other 5% by the December 1 deadline. Spatz requested that its rezoning petition be placed on the city council agenda so that Spatz could obtain the council's approval of its plans prior to January 22, 1991, the date on which the engineering review period would expire. Based on the city engineer's failure to act on the plans, however, the city council refused Spatz's request to place the petition on its agenda.

Defendant was aware of Spatz's and River Park's financing arrangement with La Salle and was advised by their attorney that, without approval of the final development plans by January 22, 1991, La Salle would foreclose its mortgage on the Country Club property. On January 22, 1991, the city council withdrew its preliminary approval of the plans and informed Spatz that, in order to have the zoning of the Country Club property changed, it would be required to start the commission review process from the beginning.

As a result of defendant's failure to approve the final development plans, River Park was forced to declare

bankruptcy. As part of the bankruptcy reorganization plan, River Park entered into an agreement to sell 34 acres of the Country Club property to CCE. In March 1991, River Park, Spatz, and CCE filed a new petition with defendant, in which they requested R-4 zoning only for the 34-acre parcel purchased by CCE. Again, plaintiffs participated in public hearings on the petition before the commission. The transcript of these hearings was delivered to the commission on June 29, 1992. Under defendant's zoning ordinance, the commission had 45 days from this date to vote on the petition.

In June 1992, La Salle instituted foreclosure proceedings on the Country Club property. Plaintiffs entered into an agreement with La Salle whereby they would continue to pursue rezoning and would have the right to redeem the property if their efforts were successful. Defendant was aware of this arrangement with La Salle. Without plaintiffs' knowledge, however, defendant negotiated with La Salle for the purchase of the mortgaged property while the second petition for rezoning was pending.

On July 21, 1992, the commission adopted a resolution requiring plaintiffs to submit proof of their ownership of the subject property by August 11, 1992. The resolution further provided that the commission would deem the petition withdrawn if it did not receive plaintiffs' evidence of title by this date. Plaintiffs challenged the commission's authority to require them to provide evidence of ownership. Nevertheless, they notified the commission that they had requested proof of title from La Salle but would be unable to obtain this documentation by August 11, 1992. The commission refused to grant plaintiffs an extension of time. When plaintiffs attempted to present proof of ownership at a later commission meeting, the commission informed plaintiffs that their petition had been deemed withdrawn and that they would be required

to once again start the rezoning process from the beginning.

Subsequently, defendant purchased the Country Club property from La Salle for $10 million, a price far below the market value of the property. According to plaintiffs' information and belief, defendant sold or attempted to sell substantial portions of this property to others for residential development.

Based on these alleged events, on February 23, 1993, plaintiffs filed a two-count complaint against defendant in the United States District Court for the Northern District of Illinois. In this complaint, plaintiffs asserted that defendant was liable pursuant to 42 U.S.C. § 1983 (1994) for depriving them of their property rights without due process of law in violation of the United States Constitution. According to plaintiffs, they had a legal entitlement to approval of their engineering plans and to the rezoning they requested. They alleged that defendant's failure to act on the plans and vote on their second petition deprived them of this property right without due process of law. The complaint alleged no claims under state law.

Defendant filed a motion to dismiss plaintiffs' federal complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(1), (b)(6). On July 22, 1993, the district court issued a written order in which it found that plaintiffs had failed to allege a violation of due process. The court therefore granted defendant's motion and dismissed plaintiffs' complaint with prejudice. *River Park v. City of Highland Park*, No. 93—C—1179, slip op. at 11-12 (N.D. Ill. July 22, 1993). On April 25, 1994, the United States Court of Appeals for the Seventh Circuit affirmed the dismissal of plaintiffs' federal complaint. *River Park, Inc. v. City of Highland Park*, 23 F.3d 164 (7th Cir. 1994).

Having failed in their attempt to obtain a remedy for defendant's actions in federal court, plaintiffs filed a six-count complaint against defendant in the circuit court of Lake County on November 21, 1994. On March 15, 1995, they filed an amended complaint, which added a seventh count. The theories of relief asserted in plaintiffs' amended complaint were based on state law and included, *inter alia*, (1) tortious interference with business expectancy, (2) breach of implied contract, and (3) abuse of governmental power. In the tortious interference with business expectancy count of the amended complaint, plaintiffs alleged that they had a reasonable expectation of entering into profitable sale and development contracts and that defendant had intentionally interfered with this expectancy by delaying the rezoning and plat approval process in order to acquire the property at a price less than market value. With respect to their claim for breach of implied contract, plaintiffs alleged that, by accepting the fee they paid for processing their zoning petition, defendant entered into an implied contract to process this petition in good faith. They alleged that defendant breached this agreement by prolonging the zoning process, by failing to review the engineering plans within a reasonable period of time, and by deeming their application withdrawn. In the abuse of power count of their amended complaint, plaintiffs alleged that, by forcing them into bankruptcy and foreclosure in order to acquire their land at a reduced price, defendant abused its power under the Illinois Constitution to acquire private property for public use in exchange for just compensation. In each of these counts, plaintiffs requested damages of $25 million. They requested an additional $25 million in punitive damages for their abuse of governmental power claim.

Defendant filed a motion pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West

1994)) to dismiss plaintiffs' amended complaint in its entirety for failure to state a claim. The circuit court granted defendant's motion and dismissed all counts of plaintiffs' complaint with prejudice.

On appeal, the appellate court affirmed the circuit court's dismissal of all but three of the counts included in plaintiffs' amended complaint. The appellate court found that the circuit court had erred in dismissing the counts of plaintiffs' complaint involving tortious interference with business expectancy, breach of implied contract, and abuse of governmental power. The court remanded the cause for further proceedings on these counts. *River Park, Inc. v. City of Highland Park*, 281 Ill. App. 3d 154 (1996) (*River Park I*).[1]

This court denied the City's petition for leave to appeal from this decision. *River Park, Inc. v. City of Highland Park*, 168 Ill. 2d 624 (1996).

On remand, defendant moved to dismiss the remaining three counts of plaintiffs' amended complaint. Defendant requested that these claims be dismissed pursuant to section 2—619 of the Code of Civil Procedure on the basis that (1) plaintiffs' claims were barred under the doctrine of *res judicata* by the dismissal of plaintiffs' federal complaint, and (2) the one-year statute of limitations contained in section 8—101 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/8—101 (West 1996)) (Tort Immunity Act) barred plaintiffs' claims. The circuit court granted this motion and dismissed plaintiffs' complaint with prejudice.

Plaintiffs again appealed the dismissal of their complaint to the appellate court. The appellate court affirmed the circuit court's dismissal of plaintiffs' tortious

---

[1] To facilitate our discussion of the procedural history of this case, we will refer to the state court proceedings up to and including the 1996 appellate court decision as *River Park I*.

interference with business expectancy claim, but it reversed the dismissal of their claims for breach of implied contract and for abuse of governmental power. 295 Ill. App. 3d 90 (*River Park II*).[2]

The appellate court found that plaintiffs' state claims were not barred by the doctrine of *res judicata*. According to the appellate court, the dismissal of plaintiffs' federal complaint was not an adjudication on the merits because it was based on lack of subject matter jurisdiction as well as failure to state a claim. In addition, the court found that the doctrine of *res judicata* did not apply because the cause of action asserted in plaintiffs' federal complaint differed from the cause of action alleged in the complaint they filed in state court. *River Park II*, 295 Ill. App. 3d at 94. Although the appellate court found that plaintiffs' claim for tortious interference with business expectancy was barred by the one-year statute of limitations contained in section 8—101 of the Tort Immunity Act, it held that this provision did not apply to plaintiffs' claims for breach of implied contract and abuse of governmental power. The court reasoned that section 2—101 of the Tort Immunity Act (745 ILCS 5/2—101 (West 1996)) exempts contract actions from the provisions of the Act and that the Act has been held to be inapplicable to violations of constitutional rights. The court concluded that the five-year statute of limitations contained in section 13—205 of the Code of Civil Procedure (735 ILCS 5/13—205 (West 1996)) governed these claims and that they had been filed within this time limit. The appellate court, therefore, remanded the cause for further proceedings on plaintiffs' claims for breach of implied contract and abuse of governmental power. *River Park II*, 295 Ill. App. 3d at 97.

---

[2] We refer to the proceedings in state court after remand as *River Park II*.

Defendant filed a petition for leave to appeal as a matter of right or, in the alternative, for leave to appeal pursuant to Illinois Supreme Court Rule 315 (166 Ill. 2d R. 315; 134 Ill. 2d R. 317). We granted their petition. We also allowed *amicus curiae* briefs to be filed by the City of Chicago, Cook County, and the Illinois Municipal League. For the reasons that follow, we reverse the judgment of the appellate court.

## ANALYSIS

In this court, defendant argues that it was error for the appellate court to reinstate plaintiffs' claims for breach of implied contract and abuse of governmental power in *River Park II*. Defendant asserts four bases for reversing the appellate court: (1) the dismissal of plaintiffs' federal complaint precludes their state claims under the doctrine of *res judicata*; (2) plaintiffs' state claims are untimely pursuant to the one-year statute of limitations contained in section 8—101 of the Tort Immunity Act (745 ILCS 10/8—101 (West 1994)); (3) defendant is immune from liability pursuant to section 2—104 of the Tort Immunity Act (745 ILCS 5/2—104 (West 1996)), which provides local governmental entities with immunity from liability associated with refusals to issue permits and licenses; and (4) plaintiffs have failed to state a claim for breach of implied contract.

Plaintiffs respond that the appellate court's reasoning and holding in *River Park II* were correct and, therefore, the first two arguments defendant raises do not warrant reversal of its judgment. With respect to defendant's third and fourth arguments, plaintiffs assert that these issues are not properly before us. They argue that these issues were resolved in their favor by the appellate court in *River Park I*, and this court denied defendant's petition for leave to appeal from that decision. In addition, they contend that defendant's failure to present these issues to the appellate court in *River*

*Park II* precludes it from raising them in this court. In addition to making this waiver argument in their brief, plaintiffs filed a motion asking us to strike the portions of defendant's brief addressing these issues. We ordered plaintiffs' motion taken with the case.

We begin by addressing defendant's argument that the doctrine of *res judicata* required the dismissal of plaintiffs' claims for breach of implied contract and abuse of governmental power. Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334-35 (1996); *Rodgers v. St. Mary's Hospital*, 149 Ill. 2d 302, 311-12 (1992). The bar extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit. *La Salle National Bank v. County Board of School Trustees*, 61 Ill. 2d 524, 529 (1975). For the doctrine of *res judicata* to apply, the following three requirements must be satisfied: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies. *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 73-74 (1994).

In the case before us, the parties do not dispute that plaintiffs' federal and state suits involve an identity of parties. They do, however, disagree with respect to the existence of the other two prerequisites to the application of the *res judicata* doctrine. According to defendant, the federal court dismissed plaintiffs' complaint for failure to state a claim, which operated as a final adjudication on the merits. In addition, defendant contends that the causes of action asserted in plaintiffs' federal and state complaints are the same because they arose out of the same core of operative facts. Defendant notes that

both actions were based on its alleged wrongful refusal to act on or approve plaintiffs' plan to develop the Country Club property, resulting in foreclosure and the plaintiffs' loss of this property.

By contrast, plaintiffs argue that the dismissal of their federal complaint was based in part on a lack of subject matter jurisdiction and was, therefore, not a decision on the merits. They also dispute defendant's assertion that their federal and state suits involved the same cause of action. Plaintiffs argue that their section 1983 action required "proof of facts (*i.e.*, a federally protected property interest and violation of due process) which are not necessary" to sustain their state claims for breach of implied contract and abuse of governmental power. Since the evidence necessary to prove their state and federal claims is different, plaintiffs maintain that these suits do not constitute the same cause of action.

To determine whether the doctrine of *res judicata* applies in this case, our initial inquiry is whether the dismissal of plaintiffs' federal complaint was a final judgment on the merits. Illinois Supreme Court Rule 273 provides:

> "Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." 134 Ill. 2d R. 273.

Under Illinois law, therefore, it is clear that the dismissal of a complaint for failure to state a claim is an adjudication on the merits (see *Bentley v. Glenn Shipley Enterprises, Inc.*, 248 Ill. App. 3d 647, 650 (1993); *McGann v. Illinois Hospital Ass'n*, 172 Ill. App. 3d 560, 568-69 (1988)), while the dismissal of a complaint for lack of subject matter jurisdiction is not considered a decision on the merits of that complaint (see *Lenz v. Julian*, 276 Ill. App. 3d 66, 74 (1995)). The same is true under federal

law. See Fed. R. Civ. P. 41(b); *Cannon v. Loyola University*, 609 F. Supp. 1010, 1015 (N.D. Ill. 1985) (dismissal for failure to state a claim operates as an adjudication on the merits); *Paganis v. Blonstein*, 3 F.3d 1067, 1071 (7th Cir. 1993) (same); *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1277 (7th Cir. 1983) (dismissal for lack of subject matter jurisdiction does not operate as an adjudication on the merits).

Neither party challenges these principles. Instead, they disagree with respect to the basis of the federal court's dismissal of plaintiffs' complaint. Defendant argues that the federal court dismissed the complaint for failure to state a claim, while plaintiffs maintain that the dismissal was for failure to state a claim *and* lack of subject matter jurisdiction. Our review of the text of the decisions issued by the federal district and appellate courts convinces us that defendant's interpretation is the correct one.

In the opening paragraph of its written memorandum opinion and order, the district court notes that the bases for defendant's motion to dismiss plaintiffs' complaint were failure to state a claim (Fed. R. Civ. P. 12(b)(6)), as well as lack of subject matter jurisdiction (Fed. R. Civ. P. 12(b)(1)). No further mention of this jurisdictional issue is made in the court's opinion, and it is clear from the court's analysis that lack of subject matter jurisdiction was not the reason for its decision to dismiss plaintiffs' complaint. For example, the district court's opinion begins by reciting the standards for dismissal for failure to state a claim: "Dismissal of the complaint is proper only if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *River Park, Inc. v. City of Highland Park*, No. 93—C—1179, slip op. at 1-2 (July 22, 1993). In the remainder of the opinion, the court explains that plaintiffs failed to establish the

second element of their section 1983 action, the deprivation of a property interest without due process of law. According to the district court, plaintiffs' allegations failed to show an entitlement to the rezoning they sought: "[P]laintiffs do not allege a protectable interest implicating due process. Therefore, River Park's due process claims will be dismissed." *River Park*, slip op. at 11. Moreover, the district court observed that, even if plaintiffs had established a property interest, they would be unable to establish a due process violation because "allegations of arbitrary and irrational application of zoning ordinances are not sufficient to state a substantive due process claim." *River Park*, slip op. at 11-12. According to the district court, plaintiffs would have to rely on state law for relief. The district court, therefore, dismissed their complaint with prejudice. *River Park*, slip op. at 11-12.

Thus, the language of the district court's opinion does not permit the conclusion that the jurisdictional issue raised in defendant's motion to dismiss served as a basis for the court's decision to dismiss plaintiffs' complaint. Rather, its dismissal was plainly based on the insufficiency of the allegations of the complaint.

The Seventh Circuit's opinion affirming the district court's dismissal of plaintiffs' complaint also undermines plaintiffs' contention that the dismissal of their federal complaint was based on lack of subject matter jurisdiction in addition to failure to state a claim. The opinion is devoid of any references to jurisdiction. Instead, like the district court's opinion, the Seventh Circuit opinion focuses exclusively on the insufficiency of the allegations of the complaint. See *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 167 (7th Cir. 1993). Although the Seventh Circuit disagreed with the district court's conclusion that plaintiffs had failed to establish a protectable property interest, it affirmed the dismissal of plaintiffs'

complaint because it found that the "process" plaintiffs had received was constitutionally sufficient. According to the Seventh Circuit, the due process clause of the United States Constitution imposes only minimal procedural requirements for municipalities in zoning cases and permits cities to make political zoning decisions, as defendant did in this case. The court noted that state law might impose more stringent procedural rules, but found that plaintiffs had failed to take advantage of their state remedies until it was too late. *River Park*, 23 F.3d at 167.

After reviewing these federal decisions, we are unable to find any support for the appellate court's determination that lack of subject matter jurisdiction served as a basis for the dismissal of plaintiffs' federal complaint. Indeed, as defendant notes, the federal courts' review of the sufficiency of plaintiffs' allegations suggests the opposite conclusion. If, as plaintiff argues, the federal courts had found subject matter jurisdiction to be lacking, there would have been no need for the courts to discuss the sufficiency of plaintiffs' allegations. Further, without subject matter jurisdiction, they would have had no power to conduct this sort of review. See *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94, 140 L. Ed. 2d 210, 227, 118 S. Ct. 1003, 1012 (1998) (" 'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause' "), quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L. Ed. 264, 265 (1869). The analysis contained in the federal court decisions concerning plaintiffs' complaint indicates that plaintiffs' failure to state a claim under 42 U.S.C. § 1983 (1994) was the sole basis for dismissal. Accordingly, the dismissal of plaintiffs' federal complaint was an adjudication on the merits.

Having found that two of the three elements for the

applicability of the *res judicata* doctrine are present in this case, we turn to a discussion of the third requirement: identity of cause of action. Recently, in *Rodgers v. St. Mary's Hospital*, 149 Ill. 2d 302, 311-12 (1992), we explained that Illinois courts have adopted two tests for determining whether causes of action are the same for purposes of *res judicata*. Under the "same evidence" test, a second suit is barred "if the evidence needed to sustain the second suit would have sustained the first, or if the same facts were essential to maintain both actions." *Rodgers*, 149 Ill. 2d at 312. The "transactional" test provides that " ' "the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." ' " *Rodgers*, 149 Ill. 2d at 312, quoting *Pfeiffer v. William Wrigley Jr. Co.*, 139 Ill. App. 3d 320, 323 (1985), quoting *Baird & Warner, Inc. v. Addison Industrial Park, Inc.*, 70 Ill. App. 3d 59, 64 (1979).

In almost all cases in which Illinois courts have discussed these two tests, the courts have found that the result of the analysis was the same, regardless of which test was applied. Courts, including this court, either have found that an identity of cause of action exists under either test (see, *e.g.*, *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 338-40 (1996); *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 295-96 (1992); *Board of Education of Sunset Ridge School District No. 29 v. Village of Northbrook*, 295 Ill. App. 3d 909, 917 (1998); *Zabel v. Cohn*, 283 Ill. App. 3d 1043, 1051 (1996); but see *Agriserve, Inc. v. Belden*, 268 Ill. App. 3d 828, 830-37 (1994) (basing its decision on the transactional test only)) or they have found that there is no identity of cause of action under either test (see, *e.g.*, *Rodgers v. St. Mary's Hospital*, 149 Ill. 2d 302, 312 (1992); *Regan v. Ivanelli*, 246 Ill. App. 3d 798, 807-08 (1993); *City of Rolling Meadows v. National Advertising Co.*, 228 Ill. App. 3d

737, 743-44 (1991); *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.*, 189 Ill. App. 3d 638, 654, 657 (1989); *Pfeiffer v. William Wrigley Jr. Co.*, 139 Ill. App. 3d 320, 323-24 (1985)). As a result, it has been unnecessary for this court to decide which test is controlling if there is a conflict between the results.

In this case, however, the question of which test prevails when the results differ is presented by the parties' arguments. Although the parties argue that we may decide the *res judicata* issue in their favor under either test, they clearly disagree as to which is the appropriate test. Plaintiffs rely on the same evidence test to show that their federal and state suits are not the same causes of action for purposes of *res judicata*. According to plaintiffs,

> "A federal 1983 cause of action requires proof of facts (i.e., a federally protected property interest and violation of due process) which are not necessary for the plaintiffs to prove to entitle them to succeed in their state action for *** breach of [implied] contract (Count II), or violation of the Illinois Constitution (Count IV). Thus the facts in the federal 1983 action and this state action are not identical and the same evidence would not sustain both actions."

In support of their argument plaintiffs cite, *inter alia*, *Schmitt v. Woods*, 73 Ill. App. 3d 498 (1979), and *Kahler v. Don E. Williams Co.*, 59 Ill. App. 3d 716 (1978). In these cases, the courts do not acknowledge the transactional test. Instead, these courts based their findings that the suits at issue did not involve the same cause of action exclusively on the same evidence test. See *Schmitt*, 73 Ill. App. 3d at 500; *Kahler*, 59 Ill. App. 3d at 718-19.

Defendant responds that plaintiffs' reliance on these older appellate court cases is inconsistent with recent decisions of this court adopting the transactional test. See *Rein*, 172 Ill. 2d at 338-39; *Burris*, 151 Ill. 2d at 295-96; *Rodgers*, 149 Ill. 2d at 312. Defendant also notes that the adoption of the transactional test is in accordance with

the modern trend of court decisions, as well as the approach contained in the Restatement (Second) of Judgments. See Restatement (Second) of Judgments § 24, Comment *a*, at 197 (1982).

Based on these arguments by the parties, we find it appropriate in this case to address whether the transactional or same evidence test should be applied in cases involving issues of *res judicata*.

Although Illinois courts have generally reached the same result under either the transactional test or the same evidence test, it is important to note that these tests are not the same. As the language used to describe these tests in *Rodgers* indicates, under the same evidence test the definition of what constitutes a cause of action is narrower than under the transactional test. See *Rodgers*, 149 Ill. 2d at 312. As explained in the Restatement (Second) of Judgments, the same evidence test is tied to the theories of relief asserted by a plaintiff, the result of which is that two claims may be part of the same transaction, yet be considered separate causes of action because the evidence needed to support the theories on which they are based differs. Restatement (Second) of Judgments § 24, Comment *a*, at 197 (1982). By contrast, the transactional approach is more pragmatic. Under this approach, a claim is viewed in "factual terms" and considered "coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; *** and regardless of the variations in the evidence needed to support the theories or rights." Restatement (Second) of Judgments § 24, Comment *a*, at 197 (1982).

This court has recognized the validity of the transactional test. See *Rein*, 172 Ill. 2d at 338-39 ("to determine whether there is an identity of causes of action between the first and second suits, we must look to the facts that

give rise to plaintiffs' right to relief, not simply to the facts which support the judgment in the first action, as plaintiffs contend"); *Burris*, 151 Ill. 2d at 295, 296 ("A cause of action is defined by the facts which give the plaintiff a right to relief. While one group of facts may give rise to a number of different theories of recovery, there remains only a single cause of action. *** [I]n this matter, the single group of operative facts common to both cases is that monies used to form Progressive came from the members of the Nation and therefore constituted charitable assets"); *Rodgers*, 149 Ill. 2d at 312. Like other Illinois courts, however, we have also continued to use the standards contained in the same evidence test in our analysis of *res judicata* cases. See *Rein*, 172 Ill. 2d at 338-39; *Burris*, 151 Ill. 2d at 295-96; *Rodgers*, 149 Ill. 2d at 312. Not only has this resulted in courts having to engage in lengthy analyses of claims under both tests, it has also created confusion as to the proper application of these tests. See *Agriserve, Inc. v. Belden*, 268 Ill. App. 3d 828, 837-38 (1994) (Cook, J., specially concurring) (noting that some courts have mistakenly indicated that the tests are the same and suggesting that the court reject the same evidence test); see also 4 R. Michael, Illinois Practice § 41.5, at 315 (1989) ("It is submitted that Illinois should adopt the Restatement Second position, and eliminate the contradiction and confusion in the cases"). In this case, defendant suggests that the continued application of the same evidence test is inconsistent with our adoption of the transactional test. We agree.

Having adopted the more liberal transactional test for determining whether claims are part of the same transaction, it makes little sense to perform the identity-of-cause-of-action analysis under the more stringent standards of the same evidence test. If these stricter standards are indeed controlling, our acceptance of the

transactional test would be meaningless. Consequently, our approval of the transactional test necessitates a rejection of the same evidence test. Accordingly, we hold that the same evidence test is not determinative of identity of cause of action. Instead, pursuant to the transactional analysis, separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief. See *Rodgers*, 149 Ill. 2d at 312. Of course, under the transactional. analysis, the nature of the evidence needed to prove the claims at issue remains relevant for purposes of demonstrating that the claims arise from the same group of operative facts. Unlike the same evidence test, however, the transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction. See Restatement (Second) of Judgments § 24, Comment *b*, at 199.

Our adoption of the transactional test *in lieu* of the same evidence test is consistent with the approach proposed in the Restatement (Second) of Judgments, as well as the trend of decisions in other jurisdictions. In 1982, the Restatement abandoned the same evidence test in favor of the transactional test. See *Agriserve*, 268 Ill. App. 3d at 838 (Cook, J., specially concurring). The current version of the Restatement advances the transactional test:

> "Dimensions of 'Claim' for Purposes of Merger or Bar—General Rule Concerning 'Splitting'
>
> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ***, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) of Judgments § 24, at 196 (1982).

The Restatement further provides that a claim is extinguished under these principles,

"even though the plaintiff is prepared in the second action

(1) To present evidence or grounds or theories of the case not presented in the first action, or

(2) To seek remedies or forms of relief not demanded in the first action." Restatement (Second) of Judgments § 25, at 209 (1982).

Like the Restatement, a majority of federal courts, as well as numerous courts in other states, have applied a transactional analysis when determining whether there is an identity of cause of action for purposes of *res judicata*. See, *e.g.*, *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998); *Landscape Properties, Inc. v. Whisenhunt*, 127 F.3d 678, 684 (8th Cir. 1997); *Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997); *Computer Associates International, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997); *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1034-35 (7th Cir. 1997); *King v. Union Oil Co.*, 117 F.3d 443, 445 (10th Cir. 1997); *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996); *In re Intl Nutronics, Inc.*, 28 F.3d 965, 971 (9th Cir. 1994); *Agrilectric Power Partners, Ltd. v. General Electric Co.*, 20 F.3d 663, 665 (5th Cir. 1994); *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc.— Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992); *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1551 (11th Cir.

1990); *Young Engineers, Inc. v. United States International Trade Comm'n*, 721 F.2d 1305, 1314-15 (Fed. Cir. 1983); *Terry ex rel. Christian Book Center v. Taylor*, 293 Ark. 237, 240, 737 S.W.2d 437, 438 (1987); *Delahunty v. Massachusetts Mutual Life Insurance Co.*, 236 Conn. 582, 590, 674 A.2d 1290, 1294-95 (1996); *Faulkner v. Government Employees Insurance Co.*, 618 A.2d 181, 183 (D.C. App. 1992); *Kauhane v. Acutron Co.*, 71 Haw. 458, 464, 795 P.2d 276, 279 (1990); *Vergne v. Lamaze*, 670 So. 2d 599, 601-02 (La. App. 1996); *Petit v. Key Bancshares of Maine, Inc.*, 635 A.2d 956, 959 (Me. 1993); *Douglas v. First Security Federal Savings Bank, Inc.*, 101 Md. App. 170, 188, 643 A.2d 920, 929 (1994); *Bergeron v. Busch*, 228 Mich. App. 618, 620-21, 579 N.W.2d 124, 126 (1998); *Delhagen v. Miracle Recreation Equipment Co.*, 924 S.W.2d 582, 586 (Mo. App. 1996); *Grava v. Parkman Township*, 73 Ohio St. 3d 379, 382, 653 N.E.2d 226, 229 (1995); *Eigabri v. Lekas*, 681 A.2d 271, 276-77 (R.I. 1996); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630-31 (Tex. 1992); *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 553, 525 N.W.2d 723, 728-29 (1995). Our decision in this case that the transactional test should control is in accordance with these authorities, as well as this court's existing recognition of this analysis.

We now turn to an application of the transactional test to the case before us. Under this test, we find that plaintiffs' claims for breach of implied contract and abuse of governmental power are the same cause of action as the section 1983 claim alleged in their federal complaint. Plaintiffs' federal and state claims are the same cause of action for purposes of *res judicata* because they arise from the same core of operative facts. Like their section 1983 action, plaintiffs' state law claims are based on defendant's alleged refusals to timely process and approve their rezoning petition in an effort to deprive plaintiffs of their rightful use of their property. Plaintiffs

themselves concede in their brief that "both the federal action and the present state action in the case at bar arise out of the processing of the plaintiffs' applications for plan approval by the defendant and both actions seek damages for the wrongful acts of the defendants in processing those applications."

Perhaps the most telling indication of identity of cause of action in this case, however, is the parallels between the factual allegations of plaintiffs' state complaint and their federal complaint. In support of their section 1983 claim, plaintiffs alleged, *inter alia*, that (1) they had received preliminary approval of their zoning request and development plan, (2) as a result of the city engineer's refusal to act on the engineering plans they submitted, defendant withdrew its preliminary approval, (3) the withdrawal of this approval resulted in La Salle's foreclosure on the property, (4) defendant was without authority to demand proof of plaintiffs' ownership of the property and failed to give plaintiffs a reasonable time to provide this information, (5) plaintiffs were entitled to the zoning approval they requested, and (6) defendant's refusals to properly process plaintiffs' request for rezoning were intended to prevent plaintiffs' development of the Country Club property so that defendant could purchase the property itself at a reduced price. As our previous description of the facts contained in plaintiffs' state complaint demonstrates, the facts on which they base their claim for relief under state law are virtually identical to the facts on which their federal claim was based.

In arguing that their federal and state claims are not the same causes of action, plaintiffs rely on differences in the theories of relief asserted in these suits. This is contrary to the principles of the transactional analysis, which we have explained before and reaffirm in this case. As we stated in *Torcasso v. Standard Outdoor Sales, Inc.*,

157 Ill. 2d 484, 490-91 (1993), suits involving different theories of relief may constitute the same cause of action:

> "Although a single group of operative facts may give rise to the assertion of more than one kind of relief or more than one theory of recovery, assertions of different kinds or theories of relief arising out of a single group of operative facts constitute but a single cause of action."

See also *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 295 (1992) ("A cause of action is defined by the facts which give the plaintiff a right to relief"). For example, in *Burris*, we found that the causes of action asserted in a probate proceeding and an unjust enrichment suit were the same for purposes of *res judicata*. The suits in *Burris* concerned the ownership of assets contributed to a charitable religious movement organized by Elijah Muhammad. These assets were kept in a fund entitled "Elijah Muhammad's Number Two Poor Fund Treasury." During Muhammad's lifetime, some of these assets were transferred from the Poor Fund Treasury to Progressive Land Developers, Inc. After he died intestate, Muhammad's heirs filed a petition in the probate proceeding to recover for the estate assets transferred from the Poor Fund Treasury. In addition, the Attorney General filed an unjust enrichment action against Progressive, in which the Attorney General alleged that Progressive had no entitlement to the charitable funds transferred from the Poor Fund Treasury. *Burris*, 151 Ill. 2d at 287-88.

We upheld the appellate court's decision that the decision on the heirs' petition in the probate proceeding barred the Attorney General's unjust enrichment suit under the doctrine of *res judicata*. We explained that these causes of action were the same: "[T]he single group of operative facts common to both cases is that monies used to form Progressive came from the members of the Nation and therefore constituted charitable assets. [Cita-

tion.]" *Burris*, 151 Ill. 2d at 295-96. See also, *e.g.*, *Board of Education of Sunset Ridge School District No. 29 v. Village of Northbrook*, 295 Ill. App. 3d 909, 917 (1998) (earlier suit between the parties concerning annexation involved the same cause of action as a subsequent suit involving annexation); *Zabel v. Cohn*, 283 Ill. App. 3d 1043, 1049-50 (1996) (former employee's suit against employer for unjust enrichment, breach of contract, *quantum meruit*, and administrative review of the dismissal of his wage claim involved the same cause of action as his previous suit alleging an entitlement to a distribution of the assets of the law firm where he worked); *Bennett v. Gordon*, 282 Ill. App. 3d 378, 383 (1996) (attorney's fee petition and client's legal malpractice action were the same cause of action); *Horton v. Caterpillar, Inc.*, 260 Ill. App. 3d 150, 153 (1994) (employee's federal action against his employer was the same cause of action as his state claim for retaliatory discharge).

In the case before us, our review of the pleadings convinces us that there is no material difference between plaintiffs' federal and state causes of action. Plaintiffs' assertion of state law claims for breach of implied contract and abuse of governmental power after their section 1983 action was dismissed was merely a "substitution of labels" (*Neuberg v. Michael Reese Hospital & Medical Center*, 118 Ill. App. 3d 93, 99 (1983) (holding that a suit for fraud was barred under the doctrine of *res judicata* by the dismissal of an earlier suit for intentional infliction of emotional distress); see also *Phillips v. Elrod*, 135 Ill. App. 3d 70, 75 (1985) (the plaintiff's state wrongful death suit was the same cause of action as her previously dismissed federal section 1983 case); Restatement of Judgments 2d § 25, Comment *e*, at 213 (1982) (a given claim may be based on either federal or state law and, if a plaintiff brings an action where he could have presented both grounds, he may not bring a second ac-

tion presenting the other ground). We hold that the breach of implied contract and abuse of governmental power claims contained in the amended complaint plaintiffs filed in state court are the same cause of action as the section 1983 claim alleged in plaintiffs' federal complaint. Accordingly, the three requirements for the application of the doctrine of res judicata are satisfied in this case.

Nevertheless, plaintiffs contend that the doctrine of res judicata should not bar their state claims because they could not have asserted these claims in federal court. According to plaintiffs, the district court would have lacked subject matter jurisdiction over these claims after it dismissed their section 1983 action. This argument is unavailing.

While it is true that the doctrine of res judicata does not bar a claim if a court would not have had subject matter jurisdiction to decide that claim in the first suit involving the same cause of action (see Airtite v. DPR Ltd. Partnership, 265 Ill. App. 3d 214, 219 (1994); Restatement (Second) of Judgments § 26(1) (1982)), we cannot say in this case that the district court would have lacked jurisdiction over plaintiffs' state law claims. Federal courts are entitled to exercise supplemental jurisdiction over claims that are part of the "same case or controversy" as a claim over which they have original jurisdiction. 28 U.S.C. § 1367(a) (1994). Plaintiffs do not argue that their state claims would not have been considered part of the same case or controversy of their section 1983 claim. Instead, they contend that the district court would have dismissed these state claims for lack of subject matter jurisdiction when it dismissed their section 1983 claim. Contrary to plaintiffs' assertion, a district court is not required to dismiss pendent state claims after dismissing the claim from which its original jurisdiction stems. Instead, a district court has the discre-

tion to exercise supplemental jurisdiction over pendent state claims under these circumstances. See 28 U.S.C. § 1367(c) (1994) ("[t]he district courts *may* decline to exercise supplemental jurisdiction over a claim \*\*\* if \*\*\* (3) the district court has dismissed all claims over which it has original jurisdiction" (emphasis added)); *Timm v. Mead Corp.*, 32 F.3d 273, 276-77 (7th Cir. 1994).

In this case, we cannot agree with plaintiffs that, had they attempted to bring their state claims in federal court, the district court would have dismissed them for lack of subject matter jurisdiction after it dismissed their section 1983 claim. First, plaintiffs filed no state claims in federal court. Consequently, we do not know whether the district court would have refused to exercise supplemental jurisdiction over these claims. In addition, federal courts have chosen to exercise supplemental jurisdiction under circumstances similar to those in this case. See, e.g., *Timm v. Mead Corp.*, 32 F.3d 273, 274 (7th Cir. 1994) (upholding the district court's exercise of supplemental jurisdiction over the plaintiff's pendent state claims after granting summary judgment in favor of the defendant on the plaintiff's federal claim); *Myers v. County of Lake*, 30 F.3d 847 (7th Cir. 1994) (upholding the district court's exercise of supplemental jurisdiction over the plaintiffs' pendent state claims after granting summary judgment in favor of the defendant on the plaintiffs' federal claim). Plaintiffs' state claims are, therefore, claims that "could have been decided" in their federal suit. As such, they are barred under the doctrine of *res judicata* by the dismissal of the federal suit.

Plaintiffs argue that it is unfair to bar their state claims under the *res judicata* doctrine. They profess that they are caught in a "Catch-22" situation: the federal courts directed them to seek relief in state court, but the Circuit Court of Lake County held that their state claims were barred by the dismissal of their federal action. We

observe, however, that any "Catch-22" situation was created by plaintiffs themselves when they chose not to assert their state causes of action in their suit in federal court. "The purpose of res judicata is to promote judicial economy by requiring parties to litigate, in one case, all rights arising out of the same set of operative facts and also [to] prevent[ ] the unjust burden that would result if a party could be forced to relitigate what is essentially the same case." *Henstein v. Buschbach*, 248 Ill. App. 3d 1010, 1015-16 (1993); see also *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 343 (1996). This purpose would be undermined if plaintiffs were permitted to pursue their state claims after bringing the same cause of action against defendant in federal court. We hold that the circuit court properly dismissed plaintiffs' claims for breach of implied contract and abuse of governmental power under the doctrine of res judicata, and the appellate court erred in overturning the dismissal of these claims.

Given our decision that the doctrine of res judicata requires us to reverse the appellate court's judgment, it is unnecessary for us to address the merits of the other three bases proposed by defendant for reversal. The portions of defendant's brief that plaintiffs ask us to strike in the motion taken with the case, therefore, concern issues that do not affect our disposition of this appeal. We hereby deny that motion.

The judgment of the appellate court is affirmed in part and reversed in part, and the judgment of the circuit court, dismissing plaintiffs' complaint, is affirmed.

*Appellate court judgment affirmed*
*in part and reversed in part;*
*circuit court judgment affirmed.*