John **BIELENBERG** and Dixie Bielenberg, Plaintiffs–Appellants,

v.

David **GRIFFITHS**, et al., Defendants–Appellees.

No. 02–3573.

United States Court of Appeals, Seventh Circuit.

Submitted March 11, 2003.*

Decided March 14, 2003.

Rehearing Denied April 2, 2003.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f).

were alive when the officials arrived. The Bielenbergs, who appeared to be unable to care for either themselves or the cats, were taken to a hospital, where physicians authorized their psychiatric commitment. Four days later the Bielenbergs were released. They were allowed to return home after the cats had been removed. Later the Bielenbergs and the City disputed whether the house had been cleaned up and fixed up properly, and inspectors directed them to vacate temporarily while it was brought into compliance with building codes and cleanliness standards (including the extermination of fleas). In this suit under 42 U.S.C. § 1983, the Bielenbergs contend that the officials who carried out the search, plus the City and some of its senior officials, violated their constitutional right to be free of unreasonable searches and seizures (including not only the entry of their house, and the later order to vacate, but also the seizure of their persons and their cats) and their right to due process of law (with respect to the civil commitments and the order to vacate pending cleanup).

Before EASTERBROOK, ROVNER, and EVANS, Circuit Judges.

### Order

After noticing a pungent odor emanating from the home of John and Dixie Bielenberg, neighbors contacted the authorities in Decatur, Illinois. Building-code inspectors obtained a warrant. Inspectors and police entered the Bielenberg residence on the warrant's authority. They found cats everywhere, along with cat urine and feces on the floor, walls, furniture, and occupants, plus the decaying bodies of cats and one dog; the interior was a shambles. The total number of cats was 211; the record does not show how many of these

This is the second suit between Decatur and the Bielenbergs. After the Bielenbergs were released from the hospital, the City filed a complaint in state court charging them with violating an animal-control ordinance. The Bielenbergs conceded that the City could prove its case; in exchange the City promised not to seek fines. On the basis of the stipulation, the state court ordered the Bielenbergs to reimburse the City $6,360 to cover the expense of removing and destroying the cats; the judge also enjoined the Bielenbergs from keeping cats or dogs in their house. This order supplies the foundation for the district court's conclusion that the Bielenbergs' federal suit comes within the *Rooker–Feldman* doctrine and hence must be dismissed for lack of subject-matter jurisdiction.

The *Rooker–Feldman* doctrine, named after *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), establishes that decisions of state courts may not be challenged in litigation under § 1983; instead the aggrieved party must pursue appellate remedies through the state system and seek certiorari under 28 U.S.C. § 1257. So stated, however, it is irrelevant: the Bielenbergs do not want their $6,360 back or seek a district judge's permission to own cats and dogs. They want damages for acts that occurred outside the courthouse. None of the loss for which they now seek compensation was caused by the state litigation, so the *Rooker–Feldman* doctrine is beside the point.

Nor do principles of claim preclusion (res judicata) bar the Bielenbergs' entire suit. They do knock out any claim for damages on account of the cats' removal; that was the subject of the state case, and the Bielenbergs' opportunity to file a counterclaim means that they had to litigate in state court any dispute with the City about the cats' seizure and disposition. See *Durgins v. East St. Louis,* 272 F.3d 841 (7th Cir.2001). Complaints about the seizure of their persons were not part of the state case, however; civil commitment of two adult humans is not remotely the same transaction as the seizure and destruction of 211 felines. Federal courts must give a state judgment whatever preclusive effect the rendering state would. 28 U.S.C. § 1738. Illinois, which uses the same-transaction approach to preclusion, see *River Park, Inc. v. Highland Park,* 184 Ill.2d 290, 234 Ill.Dec. 783, 703 N.E.2d 883 (1998), would not deem its judgment as having any effect beyond the financial consequences of seizing the cats. Moreover, the housing-code wrangles, and the order to vacate the house temporarily, came *af-*

*ter* the state-court judgment and could not be affected by it.

The district court therefore should not have dismissed the Bielenbergs' suit outright on the basis of the state litigation. Only the portion of the federal suit that concerns the Bielenbergs' animals is within the scope of the state judgment. Still, before pursuing this case further and potentially exposing themselves to sanctions for frivolous litigation, the Bielenbergs should recognize that the City cannot be held liable for the actions of its employees, see *Monell v. New York Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (municipalities are liable only for their policies), and that the employees themselves may well have qualified immunity from liability in damages. The initial entry was authorized by a search warrant, and unless a warrant is transparently defective those who execute it cannot be required to pay damages. See *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Even those acts taken without a warrant, such as transporting the Bielenbergs to a hospital and ordering them to bring their home into compliance with housing codes, are covered by immunity unless objectively unreasonable. See *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

The physicians who authorized the Bielenbergs' civil commitment are not among the defendants, and the officers who took them to the hospital cannot be held vicariously liable for the physicians' later decisions. Moreover if, as defendants maintain, John Bielenberg's commitment was voluntary, any claim based on it would be frivolous. It may be that some theories (such as the use of excessive force in executing the warrant) remain open, but the Bielenbergs' appellate papers do not distinctly identify the legal points they seek

to pursue. If, notwithstanding these considerations, the Bielenbergs choose to press ahead on remand, the district court should consider swiftly the immunity defenses that the defendants have asserted.

The judgment is vacated, and the case is remanded for further proceedings consistent with this order.

Before BAUER, EVANS, and WILLIAMS, Circuit Judges.