In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 06-2579

HAL D. HICKS,

*Plaintiff-Appellant,*

*v.*

MIDWEST TRANSIT, INC.,
an Illinois Corporation,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02 C 4028—**J. Phil Gilbert**, *Judge.*

———————

ARGUED JANUARY 3, 2007—DECIDED MARCH 1, 2007

———————

Before KANNE, ROVNER and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* Hal D. Hicks appeals the district
court's grant of summary judgment to Midwest Transit,
Inc. on his claims of breach with regard to a promissory
note and a revolving line of credit. The district court held
that *res judicata* precluded Hicks's claims based upon an
Illinois state court judgment. We agree.

## I. BACKGROUND

*A. Factual Background*

Diane and C. Michael Witters were co-owners of Mid-
west, a freight trucking company, along with Hicks who

was also president and director. Hicks loaned personal assets to Midwest from time to time, and monies paid from Hicks to Midwest and vice versa were reflected on Midwest's books in what the parties call the 2020 account. The parties agree that Hicks lent Midwest $2.5 million under the terms of a 1998 promissory note and that he also maintained a revolving line of credit with Midwest.

Midwest was prosperous, but at some point the relationship between Hicks and the Witters broke down. The Witters discovered that Hicks had been engaging in ultra vires activities,[1] self dealing, and fraud. Despite the fact that Hicks had taken much more out of the corporation than he had put in, he claimed that Midwest was obligated to repay him for the outstanding balance reflected in the 2020 account. The Witters, on the other hand, believed that Hicks owed money to Midwest.

*B. Procedural Background*

In January 2000, the Witters filed a shareholders derivative suit in the Circuit Court of Lawrence County, Illinois. The Illinois state court found largely uncontradicted evidence of fraud and oppressive activity on the part of Hicks and placed Midwest in receivership, with Donald Hoagland as receiver. On July 30, 2001, without Hoagland's knowledge, this case was filed on behalf of Midwest against Hicks and the Witters by counsel that Hicks had previously retained for Midwest. Hicks then filed counterclaims for money allegedly owed on the promissory note and revolving line of credit. Having discovered the lack of communication between Midwest's prior counsel and Hoagland, Midwest dismissed its

---

[1] Such activities include spending corporate assets on NASCAR racing and keeping the prize money for himself.

complaint because it had actually been filed without its authorization. Only Hicks's counterclaims remain.[2]

Meanwhile, the Illinois state case proceeded to a bench trial. The case reached its conclusion only after thirty-seven days of testimony—multiple days of which were spent on expert testimony regarding the 2020 account, loans from Hicks to Midwest, and the repayment of such loans.[3] The state court purported to resolve all claims for money loaned from Hicks to Midwest. In regard to the 2020 account, the court entered judgment in favor of Midwest in the amount of $565,508.32. Hicks was denied a stay of the Illinois state judgment pending appeal and failed to post a supersedeas bond, making the judgment final and enforceable against him.

Then, in this case, Midwest moved for summary judgment under Federal Rule of Civil Procedure 56(c) claiming *res judicata* precluded Hicks's claims as they had already been the subject of a final judgment in Illinois state court. The district court held that the Illinois state court judgment precluded Hicks's claims in the present action and granted Midwest's motion for summary judgment.

## II. ANALYSIS

The only issue before us is whether summary judgment was proper against Hicks based on the *res judicata* effect

---

[2] Midwest moved the district court to dismiss Hicks's counterclaims for want of subject matter jurisdiction. After an appeal to and remand from this court, the district court ultimately determined that there was diversity of citizenship between the parties and that it had jurisdiction to hear the claims. *See Midwest Transit, Inc. v. Hicks*, 79 Fed. Appx. 205 (7th Cir. 2003).

[3] Also at this time, a third proceeding was underway in Florida state court.

of the Illinois state court disposition. We review a district court's grant of summary judgment *de novo* and view all facts in the light most favorable to the non-moving party. *Massy v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).[4]

We apply the preclusion law of the state that rendered the judgment to determine whether *res judicata* controls this case. *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 373 (1996); *E.B. Harper & Co., Inc. v. Nortek, Inc.*, 104 F.3d 913, 921 (7th Cir. 1997); *see also* 28 U.S.C. § 1738 (extending preclusive effect to state court proceedings in federal court). Under Illinois law, "a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998) (citing *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1204 (Ill. 1996); *Rodgers v. St. Mary's Hosp.*, 597 N.E.2d 616, 620-21 (1992)).

Three requirements must be satisfied before *res judicata* precludes a claim: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Nowak v. St. Rita*

---

[4] Midwest argues that this case is more akin to a bench trial on stipulated facts than a summary judgment disposition, in which case we would review for clear error rather than *de novo*. As we would reach the same conclusion under either standard of review, we need not consider this argument. *See Home Protective Servs., Inc. v. ADT Security Servs., Inc.*, 438 F.3d 716, 718-19 (7th Cir. 2006).

*High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001); *River Park*, 703 N.E.2d at 889 (citing *Downing v. Chicago Transit Auth.*, 642 N.E.2d 456, 458 (Ill. 1994)). *Res judicata* bars not only issues that were actually raised in the prior proceeding, but also issues which could have been raised in the prior proceeding. *River Park*, 703 N.E.2d at 889. Federal courts apply an exception to the *res judicata* rule. *Res judicata* will not apply "if the plaintiff did not have a full and fair opportunity to litigate his claim in state court. A plaintiff is afforded a full and fair opportunity to litigate his claims so long as the state court proceedings complied with the minimum procedural requirements of the Due Process Clause." *Licari v. City of Chicago*, 298 F.3d 664, 667 (7th Cir. 2002) (internal citation omitted).

In this case, the three requirements for *res judicata* are satisfied and the exception does not apply. There is clearly an identity of parties as Hicks's claims in Illinois state court were against Midwest. Hicks argues, however, that there was neither a final judgment on the merits nor an identity of cause of action. He contends that the promissory note and line of credit were not fully litigated because there was no testimony as to the terms of either the note or line of credit and insufficient findings of fact and conclusions of law in the state court's Final Judgment Order. Hicks further suggests that the Illinois state court severed all claims to be tried by a jury, and that his claims on the promissory note and line of credit were included in this severance.

The Illinois state bench trial included testimony regarding the 2020 account and it was specifically addressed in the Final Judgment Order. R. 61, Ex. A, B, E. It would not be necessary for the court to make findings of fact as to the exact terms of the promissory note and line of credit because it determined that the amount of money that Hicks improperly took from Midwest exceeded any out-

standing debts Midwest owed him. To the extent that Hicks believes the evidence regarding the promissory note and line of credit introduced in the state trial to be lacking, he can blame no one but himself. As noted earlier, *res judicata* applies not only to those claims that were actually litigated in the prior proceeding, but also those that could have been. *River Park*, 703 N.E.2d at 889.

Furthermore, the record bears out Midwest's assertion that the only claims severed from the trial were those claims by Hicks against third parties, not claims by Hicks against Midwest. The Lawrence County Circuit Court stated that it was severing "the claims by Mr. Hicks against the Witters and the Witters individually against Mr. Hicks where they don't have anything to do with the corporation, Midwest Transit, Inc. Those issues will be determined at a subsequent jury trial . . . ."[5] R. 67, Ex. G., p. 96.

Hicks had a full and fair opportunity to litigate his claim in state court, and the minimum procedural requirements of the Due Process Clause were met. As Midwest's counsel said at oral argument: "Been there, done that. . . . [This is a case of] would of, could of, should of." All of the requirements for *res judicata* are satisfied and summary judgment in favor of Midwest is proper.

### III. CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

[5] The Illinois state court dubbed these issues the "Billy Bob issues," because they largely dealt with a bar known as Billy Bob's.

No. 06-2579 7

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*