NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**


Argued April 11, 2013
Decided August 13, 2013

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 12-3452

| | |
|---|---|
| ANDRE HARRISON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| v. | |
| | No. 11-CV-4067 |
| DEERE & COMPANY, a corporation, | |
| *Defendant-Appellee.* | **Sara Darrow**, *Judge.* |


**O R D E R**

Andre Harrison worked in a management position for Deere & Company, but Deere fired him after it determined that he was engaged in sexual misconduct with subordinates. Harrison filed this suit and alleged that his termination was based on his race, and not his sexual misconduct. But this is the third time Harrison has sued Deere about his termination. Therefore, based on res judicata, Deere moved for judgment on

the pleadings under Federal Rule of Civil Procedure 12(c). The district court granted Deere's motion and dismissed the case. Harrison appealed, and argues that his previous litigation does not preclude this suit. We disagree, and affirm the district court's dismissal.

## I. Facts

On September 2, 2011, Harrison filed a complaint alleging that Deere & Company had terminated his employment because he was black. The complaint described Harrison's job as an Operations Manager at the John Deere Seeding Group facility in Moline, Illinois. Harrison alleged that his job performance met Deere's reasonable expectations, but he was accused of sexually assaulting the daughter of a Deere employee and also of sexually harassing a female subordinate named Heather Thielbert. Harrison claimed that these accusations were false, but Deere nonetheless launched an investigation into Harrison's behavior.

As a result of its investigation, Deere learned that Harrison's marriage was falling apart and that Harrison had not been living with his wife for several months. Instead, he had been dating Thielbert during that time. Harrison denied that he had sexually harassed Thielbert or had pursued a relationship with her during work hours, and he asserted that his relationship with Thielbert did not cause Deere to suffer any financial liability.

Nonetheless, on September 3, 2009, Deere fired Harrison. Deere stated that it fired Harrison because he had violated the company's policy that prohibited managers from engaging in sexual relationships with subordinate employees. Deere had stated that it had "zero tolerance" for violations of this policy. But Harrison claimed that Deere had previously looked the other way and had not enforced its policy when a white manager allegedly engaged in an extramarital affair with a married subordinate. Because Deere allegedly had not enforced its policy for white managers, Harrison stated that he had been terminated because he is black. He therefore alleged that Deere's decision to fire him had violated 42 U.S.C. § 1981, and he sought a variety of remedies from Deere.

Deere's answer denied Harrison's allegations and asserted that Harrison had been "terminated for legitimate, non-discriminatory reasons, and not because he is African-American." But more importantly, Deere stated that Harrison's allegations were based on facts that had already been litigated in two prior cases, and his § 1981

claim was therefore barred by res judicata. Deere's answer specifically referenced the two prior cases: *Harrison v. Addington*, No. 09-L-136 (Rock Island Co., Ill., Cir. Ct. filed Oct. 2, 2009), and *Harrison v. Deere & Co. (Deere I)*, No. 10-L-75 (Rock Island Co., Ill., Cir. Ct. filed June 16, 2010).

*Harrison v. Addington* began on October 2, 2009, when Harrison filed a complaint in Illinois state court against three Deere managers who had investigated Harrison's sexual conduct and had decided to fire him.[1] Compl. at 1-2, *Addington*, No. 09-L-136. The complaint was later amended (twice), and the third complaint alleged that eight Deere managers had defamed Harrison and intentionally interfered with his employment. Third Am. Compl. at 1-25, *Addington*, No. 09-L-136. The trial court allowed the case to proceed to discovery, then ruled in favor of the eight Deere managers on summary judgment. *Addington*, 955 N.E.2d 700, 702-03 (Ill. App. Ct. 2011). Harrison appealed. *Id.*

On September 6, 2011, an Illinois appellate court affirmed the trial court's ruling and thoroughly recounted the facts underlying its decision. *Id.* at 703-05. Harrison had started working for Deere in 1999, and Deere had promoted him five times and had increased his salary on more than ten occasions. *Id.* at 703. But on August 30, 2009, a Deere employee informed a Deere administrator that Harrison had raped his daughter. *Id.* The employee also reported that Harrison was forcing Heather Thielbert to have a sexual relationship with him by threatening her job if she refused his advances. *Id.*

The Deere managers talked to Harrison about the accusations, then decided to launch a formal investigation into his behavior "due to the concern for potential workplace harassment and violence." *Id.* at 704. A Deere investigator then interviewed at least five people involved in Harrison's case, and the investigation revealed that Harrison had been involved in sexual relationships with at least three Deere employees. *Id.* at 704-05. Based upon these revelations, Harrison emailed a Deere manager: "I understand the seriousness of the situation. I wanted to assure you I have taken all the steps to end those relationships to better ensure that no future issues arise. … It was far below the professional standard I expect for myself." *Id.* at 705. Deere managers then reviewed the investigation's results, and the managers decided to terminate Harrison's

---

[1] Harrison also sued the Deere employee who had accused him of sexual assault and harassment, but the claims against that employee do not affect this appeal. *See* Complaint at 1, *Addington*, No. 09-L-136.

employment. *Id.* This decision was not unusual for an employee who had engaged in a sexual relationship with a subordinate; indeed, Deere regularly fired employees for engaging in conduct that was less offensive than Harrison's. *Id.* On September 3, 2009, two Deere managers told Harrison that he was fired "due to the information discovered in the investigation." *Id.*

The Illinois appellate court then considered Harrison's legal arguments, and ruled against him across the board. *Id.* at 706-13. It affirmed the trial court's decision to grant summary judgment in favor of the Deere managers. *Id.* Significantly, at the end of the opinion, the court wrote: "The record clearly establishes that [Harrison's] conduct in having relationships not only with subordinates, but also with wives and a daughter of employees created a risk of workplace violence as well as a risk of financial liability for Deere. We find this appeal to be totally devoid of merit." *Id.* at 713.

*Harrison v. Deere* began on June 16, 2010, when Harrison filed a new complaint in Illinois state court about his termination at Deere. Compl. at 1, *Deere I*, No. 10-L-75. Unlike in *Addington*, Harrison only sued Deere, and not its managers. *Id.* Harrison later amended his complaint, and alleged that Deere had violated the Illinois Personnel Records Review Act ("IPRRA"), invaded his privacy, and wrongfully terminated his employment. Second Am. Compl. at 1-16, *Deere I*, No. 10-L-75. The trial court first considered Harrison's claims for invasion of privacy and wrongful termination, then dismissed them with prejudice for failing to state a claim. Op. and Order on Deere's Mot. to Dismiss Count II at 6, *Deere I*, No. 10-L-75; Op. and Order on Deere's Mot. to Dismiss Count III at 8, *Deere I*, No. 10-L-75. Later, after the Illinois appellate court issued its ruling in *Addington*, the trial court in *Deere I* ruled that a portion of Harrison's IPRRA claim was barred by res judicata. Tr. of Hr'g on Nov. 22, 2011, at 3-8, *Deere I*, No. 10-L-75. The remaining portion of the IPRRA claim is about Deere's handling of Harrison's personnel records, and is not relevant to this appeal.

After referencing *Addington* and *Deere I* in its answer to Harrison's § 1981 claim, Deere moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Deere argued that because *Addington* and *Deere I* had already addressed the underlying facts of Harrison's § 1981 claim, res judicata barred this case from proceeding. On September 28, 2012, the district court determined that the final

judgment in *Addington* met the requirements of res judicata under Illinois state law.[2] Additionally, it determined that Harrison had a full and fair opportunity to litigate his § 1981 claim in the *Addington* proceeding. The district court therefore granted Deere's motion for judgment on the pleadings under Rule 12(c) and dismissed Harrison's suit. Harrison filed a timely notice of appeal.

## II. Discussion

Harrison argues that the district court was wrong to conclude that res judicata barred a ruling in this case. Because the district court resolved this case by granting Deere's motion for judgment on the pleadings under Rule 12(c), we treat all well-pleaded allegations in Harrison's complaint as true, and draw all inferences in his favor.[3] *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). Additionally, res judicata is an affirmative defense, and the defendant therefore has the burden of establishing it. *See Rooding v. Peters*, 92 F.3d 578, 580 (7th Cir. 1996).

The Supreme Court has ruled that "a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986) (applying the Full Faith and Credit Act, 28 U.S.C. § 1738). Therefore, to determine that a state-court judgment precludes a case filed in federal court: (1) res judicata must apply under state law; and (2) the defendant must

---

[2] The district court did not rely on *Deere I* in its res judicata analysis. The trial court's orders in *Deere I* about Harrison's claims for invasion of privacy and wrongful termination were apparently still appealable when the district court issued its decision. The district court stated that "there exists a split of authority in Illinois as to whether an appealable order is final for purposes of res judicata," and rather than address that issue, the district court simply relied on *Addington*.

[3] As a preliminary matter, Harrison argues that we should reverse the district court's opinion because it considered facts outside the pleadings (as expressed in *Addington* and *Deere I*) on a motion for judgment on the pleadings under Rule 12(c). *Addington* and *Deere I*, Harrison reminds us, are not pleadings. But the district court did not err because Deere specifically referenced these two cases in its answer to Harrison's complaint, and we have ruled that "the district court may take into consideration documents incorporated by reference to the pleadings" and "may also take judicial notice of matters of public record." *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Williamson v. Curran*, 714 F.3d 432, 441-43 (7th Cir. 2013).

have had an opportunity to fully and fairly litigate the federal claims in state court. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481-82 (1982); *Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 634-35 (7th Cir. 2004). Harrison only challenges the district court's rulings on the first element, and does not contest the district court's conclusion that he had a full and fair opportunity to litigate the § 1981 claim in the *Addington* proceedings.

We therefore only need to determine whether res judicata would apply under state law (here, Illinois). Under Illinois law, res judicata applies when: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998). "[T]he doctrine of res judicata extends not only to every matter that was actually determined in the prior suit but to every other matter that might have been raised and determined in it." *Torcasso v. Standard Outdoor Sales, Inc.*, 626 N.E.2d 225, 228 (Ill. 1993). Harrison only challenges the district court's resolution of the second and third elements of res judicata, and does not contest the district court's conclusion that *Addington* was a final judgment for purposes of the first element.

The second element of res judicata requires courts to determine whether separate cases have "an identity of cause of action." *River Park*, 703 N.E.2d at 889. To make this determination, the Supreme Court of Illinois has adopted the "transactional test," which examines whether separate claims "arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id.* at 893. We therefore examine claims based on their "factual terms," and disregard "the number of substantive theories, the variant forms of relief flowing from those theories, and the variations in evidence needed to support the theories." *Garcia*, 360 F.3d at 637.

Both *Addington* and this case are based on Harrison's sexual misconduct that led to the termination of his employment with Deere. Harrison argues that *Addington* did not address the racial issues of the § 1981 claim, but the § 1981 claim is merely a different theory of relief for the same underlying facts. Harrison also argues that the district court would have had to examine facts going back to the early 2000s to determine whether Deere had a history of racial discrimination for the § 1981 claim. These facts, Harrison claims, were not relevant in *Addington*. But this argument exaggerates the differences between *Addington* and this case; both cases are essentially about Harrison's termination, and any facts about racial discrimination in the past are marginally relevant to the operative facts of these cases. Additionally, Harrison's third amended complaint in *Addington* alleged that Deere had failed to enforce its sexual

harassment policy back in the early to mid-2000s, which means that the two cases actually do cover the same time period. Third Am. Compl. at 24-25, *Addington*, No. 09-L-136. Therefore, the claims in *Addington* and the § 1981 claim arise from "a single group of operative facts" and meet the "identity of cause of action" element for res judicata.

The third element of res judicata requires courts to determine whether separate cases have "an identity of parties or their privies." *River Park*, 703 N.E.2d at 889. "A determination regarding whether privity exists is to be conducted on a case-by-case basis." *Agolf, LLC v. Vill. of Arlington Heights*, 946 N.E.2d 1123, 1132 (Ill. App. Ct. 2011). Illinois courts often find that privity exists when "a person is so identified in interest with another that he represents the same legal right." *Jackson v. Callan Publ'g, Inc.*, 826 N.E.2d 413, 428 (Ill. App. Ct. 2005). Parties' interests are often aligned when one party is an agent of the other, and for this reason, employees can be in privity with their employers. *E.g.*, *Garcia*, 360 F.3d at 636 ("[T]he Board is an agent of the Village, and the Village, therefore, is in privity with the Board."); *Ross Adver., Inc. v. Heartland Bank & Trust Co.*, 969 N.E.2d 966, 976 (Ill. App. Ct. 2012) ("[A]s an employee of Heartland, Shafer is in privity with Heartland for purposes of res judicata.").

The defendants in *Addington* were eight managers working for Deere, while the defendant in this case is Deere itself. The eight managers operated within the scope of their employment when they investigated Harrison's sexual misconduct and decided to terminate his employment. *See Addington*, 955 N.E.2d at 708-13. Because the managers were acting as agents for Deere, the Illinois appellate court observed that Deere "would have been liable for all of the actions taken by its employees" when they terminated Harrison's employment. *Id.* at 708. Additionally, the managers' interests were aligned with Deere's interests because Harrison's conduct "created a risk of workplace violence as well as a risk of financial liability for Deere." *Id.* at 713. The eight managers and Deere shared an interest in preventing such violence and liability. Therefore, because the managers were acting as Deere's agents and they all had closely aligned interests, *Addington* and this case meet the "identity of parties or their privies" element for res judicata.

### III. Conclusion

The district court conducted a thorough analysis of the preclusive effect that *Addington* had on this case, and it determined that *Addington* required the court to dismiss this case because of res judicata. Harrison only appealed two issues for our

review, and we reject his arguments on both. First, *Addington* and this case share the same set of facts, which provides the "identity of cause of action" necessary for res judicata. Second, the eight managers in *Addington* were agents working on behalf of Deere, which provides the "identity of parties or their privies" necessary for res judicata. We therefore **AFFIRM** the district court's ruling dismissing this case.