# Illinois Official Reports

## Appellate Court

---

### *Harrison v. Deere & Co.*, 2014 IL App (3d) 130497

---

| | |
|---|---|
| Appellate Court Caption | ANDRE HARRISON, Plaintiff-Appellant, v. DEERE AND COMPANY, a Corporation, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-13-0497 |
| Filed | August 8, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's claims based on the termination of his employment by defendant for alleged sexual misconduct with subordinate employees were properly dismissed on the ground that the claims were barred by the *res judicata* effect of the decisions in two earlier lawsuits he brought involving the same claims, and his request for relief under the Illinois Personnel Record Review Act for defendant's alleged failure to send him a copy of the investigative report supporting his discharge within the required 7 days was properly denied due to the lack of any legal consequences. |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 10-L-75; the Hon. Lori R. Lefstein, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Stephen T. Fieweger and Nicholas Cibula (argued), of Katz, Huntoon & Fieweger, P.C., of Moline, for appellant.

Nina G. Stillman and Christopher J. Boran (argued), both of Morgan, Lewis & Bockius, LLP, of Chicago, for appellee.

Panel

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Carter and Schmidt concurred in the judgment and opinion.

## OPINION

¶ 1     The plaintiff, Andre Harrison, filed three separate lawsuits, including this one, in response to the termination of his employment by the defendant, Deere & Company.

¶ 2     Harrison's first litigated case was filed in Illinois state court against several of Deere's managers involved in the investigation of Harrison's alleged sexual misconduct with subordinate employees and the decision to terminate the plaintiff's employment. After two earlier amendments to the complaint, the third amended complaint alleged that Deere's managers had defamed Harrison and intentionally interfered with his employment. *Harrison v. Addington*, 2011 IL App (3d) 100810 (hereinafter *Addington*). The trial court ruled in favor of Deere's managers and the judgment was affirmed on appeal. *Id*. The appellate decision included a thorough recitation of the facts relating to all of the issues raised by Harrison as well as several entries noting that the managers' actions during the investigation were in accord with their job duties. *Id*. ¶ 75. The court further stated that the appeal was totally devoid of merit. Harrison's employment was terminated because his interactions with the subordinate employees violated company policy. *Id*. His actions "created a risk of workplace violence as well as a risk of financial liability for [the defendant]." *Id*. ¶ 83. His claims of racial discrimination or retaliation were found to be unsupported. *Id*. ¶ 79. There was no supreme court review of that decision.

¶ 3     Harrison's second case alleged an intentional racial discrimination violation under 42 U.S.C. § 1981 in federal court. The district court concluded and the Seventh Circuit affirmed that the case was barred by *res judicata. Harrison v. Deere & Co.*, 533 F. App'x 644 (7th Cir. 2013) (hereinafter *Deere*). *Addington* had already determined that the issue of race discrimination was without merit against Deere's managers and those managers were shown to be in privity with Deere. *Id*. No writ of *certiorari* has been granted in that case.

¶ 4     In this, the third case, Harrison claimed violations by Deere of the Illinois Personnel Record Review Act (the Act) (820 ILCS 40/2, 9 (West 2008)) when Deere assembled an investigative record of his associations, communications, and nonemployment activities prohibited by section 9 and failed to provide him a copy of the investigative report supporting his discharge within the seven days required by section 2 for production. He alleges that these activities were racially motivated, constituted an invasion of his privacy and resulted in his wrongful termination.

¶ 5 Deere prevailed in the trial court and Harrison appeals the following rulings of the trial court: (1) the granting of Deere's motion to reconsider and the determination that defendant's conduct did not rise to the level of bad faith and willfulness within the meaning of section 2 of the Act (820 ILCS 40/2 (West 2008)); (2) the finding that Harrison's claim pursuant to section 9 of the Act (820 ILCS 40/9 (West 2008)) was barred under the doctrine of *res judicata*, as well as prior grants of Deere's motions to dismiss the plaintiff's invasion of privacy and wrongful termination claims; and (3) the denial of Harrison's posttrial motion for leave to file a third amended complaint seeking to add a race discrimination claim.

¶ 6                      SUMMARY OF RELEVANT FACTS

¶ 7 On or around August 30, 2009, Deere initiated an investigation concerning allegations that Harrison had engaged in sexual misconduct with subordinate employees. Despite being advised that the interaction was consensual, Deere continued its investigation of the nature and extent of Harrison's relationships with the employees. Deere terminated Harrison's employment on September 3, 2009, citing violations of its policy prohibiting managers from engaging in sexual relationships with subordinate employees.

¶ 8 On September 10, 2009, Harrison sent an email to Deere formally requesting a copy of his personnel file. Deere's September 11 response advised that Sherri Martin (Martin), its human resource director, would be the contact person for the matter. Also on September 11, Martin received the investigative report (report) setting out the facts disclosed through the investigation. This report was used in determining that Harrison should be discharged.

¶ 9 On September 14, Martin mailed the plaintiff documents contained in his personnel file, but the report was not included. When Harrison received the documents on September 17, he notified Martin via email of the missing information. Martin responded with an email stating she had given him everything that was in his personnel file.

¶ 10 On September 24, the plaintiff emailed Martin, for the second time, requesting a copy of his personnel file including the information related to his discharge and stating that such information was needed for his adequate legal representation. Martin advised Harrison on that same day that further communication should then be by counsel and provided him with Deere's attorney's email address. On September 28, Harrison emailed Martin that his attorney had not been able to reach Deere's attorney. He further specified that his benefit information needed for his settlement proposition could be sent to Deere's attorney, who could then share the information with his attorney.

¶ 11 On October 5, Deere resent the file, this time including the report, to Harrison's attorney.[1] Harrison filed his complaint seeking enforcement of section 2 of the Act (820 ILCS 40/2 (West 2008)) with the Department of Labor on October 24. His original civil complaint seeking enforcement of section 2 of the Act (820 ILCS 40/2 (West 2008)) was filed on June 16, 2010.

¶ 12 During trial, Martin testified that she was familiar with Deere's "Human Resource Policy and Guidance Statement 203," which required compliance with Illinois law in responding to requests pursuant to the Act. She, however, had never read the Act and she had never asked for legal assistance in determining her compliance with the Act.

---

[1]Harrison later complained about this delivery, asserting that he had not hired counsel to assist him in securing the investigation report.

¶ 13    Martin acknowledged that documents concerning disciplinary actions can be human resource documents. However, she stated that she had never seen investigatory documents in human resource files and stated that such reports are not typically part of personnel files. She did not believe that the report should be part of Harrison's personnel file because it did not discuss any disciplinary action and she did not consider the report to be disciplinary in nature. She conceded that there was no written procedure for personnel files established for Harrison's unit of employment as recommended by Deere's human resource policy.

¶ 14    Harrison testified at trial that in his various managerial capacities he had seen reports in the files of several of his former employees. However, he had never personally placed such a report in a personnel file.

¶ 15                                          ANALYSIS
¶ 16                      I. Propriety of Granting Motion to Reconsider
¶ 17    On appeal, Harrison first argues that the court erred in granting Deere's motion to reconsider and in finding that Deere did not commit a "willful and knowing violation" of section 2 of the Act (820 ILCS 40/12(d)(2) (West 2008)). Deere concedes its actions were in violation of section 2 of the Act, but again asserts that the actions were not willfully and knowingly in violation of section 12(d)(2) (820 ILCS 40/2, 12(d)(2) (West 2008)).

¶ 18    The standard of review of a grant of a motion to reconsider is abuse of discretion. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 347 (2002). However, a trial court's order may be affirmed for any valid reason supported by the record, regardless of the reasoning used by the trial court. *Bank of America, N.A. v. Luca*, 2013 IL App (3d) 120601. To the extent this issue also presents a question of statutory interpretation, it is subject to *de novo* review. *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 603 (2008). Our primary objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. *People v. Zimmerman*, 239 Ill. 2d 491, 497 (2010). We not only look to the plain and ordinary meaning of the words in the statute but interpret those words in light of other relevant provisions in the statute. *Id.*

¶ 19    In general, the administration of section 2 and enforcement by section 12 are designed to facilitate an employee's personnel file review request. Section 2 of the Act requires: "Every employer shall, upon an employee's request *** permit the employee to inspect any personnel documents which are, have been or are intended to be used in determining that employee's qualifications for *** discharge or other disciplinary action ***." 820 ILCS 40/2 (West 2002). This section also requires that the "employer shall provide the employee with the inspection opportunity within 7 working days after the employee makes the request." *Id*.

¶ 20    Here, Deere concedes that its agent, Martin, did not provide Harrison with all of the information in his personnel file, including the report, within the seven-day time frame required of the statute. However, Deere provided these documents to Harrison on October 5, 2010, well before Harrison filed his Department of Labor complaint on October 24. Though Harrison asserts in his Department of Labor complaint and subsequent administrative hearing that the documents were improperly sent to his attorney and not directly to him, he failed to acknowledge the effective acquiescence in his email on September 28 to "counsel only" communication. That email further stipulated that sensitive documents, like his pension plan,

could be transferred to him through the attorneys. It thus appears that Deere complied with the request albeit not within the seven working days.

¶ 21    Harrison contends that because Deere did not comply with the time frame required by section 2 (820 ILCS 40/2 (West 2008)), Deere should suffer the penalty imposed by the statute. Section 12(d)(2) of the Act provides that "the court shall award an employee prevailing in an action pursuant to this Act the following damages: *** For a willful and knowing violation of this Act, $200 plus costs, reasonable attorney's fees and actual damages." 820 ILCS 40/12(d)(2) (West 2008). We fail to see how this section is actually applicable to the claims Harrison asserts.

¶ 22    In the factual context of this case, this issue is without legal consequence. The only significance of whether Deere's violation was willful is the availability of attorney fees, if reasonable. Review of section 12 of the Act in its entirety discloses procedures available for an employee whose employer has persisted in its failure to comply with the requirements of other parts of the Act. Specifically, section 12(c) provides:

> "(c) If an employer violates this Act, an employee may commence an action in the circuit court to enforce the provisions of this Act, including actions to compel compliance, where efforts to resolve the employee's complaint concerning such violation by conference, conciliation or persuasion pursuant to subsection (b) have failed and the Department has not commenced an action in circuit court to redress such violation. The circuit court for the county in which the complainant resides, in which the complainant is employed, or in which the personnel record is maintained shall have jurisdiction in such actions." 820 ILCS 40/12(c) (West 2008).

¶ 23    Immediately following this section is what Harrison refers to as the penalty that Deere should be made to suffer. He overlooks, however, that the statute imposes the penalty for the employer's "[f]ailure to comply with an order of the court." 820 ILCS 40/12(d) (West 2008).

¶ 24    Harrison is not eligible for attorney fees for two reasons: first, because the court did not compel, has not compelled, and cannot compel Deere to comply with the statutory requirements to produce the report for inspection because Deere had already produced the documents prior to Harrison's filing of the complaint with the Department of Labor and the complaint with this case. Second, Deere complied without any need for Harrison to hire counsel. *Supra* n.1. Thus, nothing related to the violation would make his attorney fees reasonable or invoke the application of this section of the statute.

¶ 25    Because of Deere's conceded technical violation of the statute's time frame requirement, section 12(e) of the Act is the only applicable portion of the administration and enforcement section of the Act. That section states that "[a]ny employer or his agent who violates the provisions of this Act is guilty of a petty offense." 820 ILCS 40/12(e) (West 2008). Deere did, in fact, violate a provision of this Act by providing Harrison with all of his personnel file documents in 25 working days rather than the statutorily required 7 days. Thus, Harrison's only relief on this count of his complaint is the acknowledgement that Deere committed a petty offense.

¶ 26                        II. General Applicability of *Res Judicata*

¶ 27    Next Harrison argues that the trial court erred in granting (1) Deere's motion for summary judgment on his claims based on section 9 of the Act and (2) Deere's motion to dismiss his

wrongful termination and invasion of privacy claims. He further argues that the trial court erred in denying his motion for leave to file a third amended complaint. Deere counters that all of these claims are barred by *res judicata*.

¶ 28 When reviewing a case decided on summary judgment or a motion to dismiss, our standard of review is *de novo*. See *Pielet v. Pielet*, 2012 IL 112064, ¶ 30. *De novo* consideration affords this court the opportunity to analyze the facts and issues independently and without deference to the trial court. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 29 In the instant case, the trial court granted Deere's summary judgment motion, finding Harrison's section 9 claim barred by *res judicata*. Based on the following analysis, we agree with that finding and further find that Harrison's invasion of privacy and wrongful termination claims are also amendable to dismissal on *res judicata* grounds.

¶ 30 *Res judicata* applies when: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). " '[T]he doctrine of res judicata extends not only to every matter that was actually determined in the prior suit but to every other matter that might have been raised and determined in it.' " *Deere*, 533 F. App'x at 648 (quoting *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 490 (1993)). Each *res judicata* factor will be addressed in turn.

¶ 31 A. Final Judgment

¶ 32 The *Addington* court held that the information acquired by Deere's managers concerning the plaintiff's relationships with subordinate employees was the reason for the plaintiff's termination under the defendant's company policy. *Addington*, 2011 IL App (3d) 100810, ¶¶ 64, 73. The federal court in *Deere* held that Harrison's issue of race discrimination was barred by *res judicata* because not only were Deere's managers (defendants in *Addington*) in privity with Deere, the cause of action had already been addressed in *Addington* using the same set of operative facts. *Deere*, 533 F. App'x at 649. No supreme court review in either case has been had or is pending.

¶ 33 Therefore, there are two "final judgments on the merits" that have been issued by "courts of competent jurisdiction" satisfying the first element of *res judicata*.

¶ 34 B. Identity of Parties or Their Privies

¶ 35 We agree with the Seventh Circuit's reasoning as to why the defendants in *Addington* and *Deere* meet the "identity of parties or their privies" element for *res judicata*.

¶ 36 The defendants in *Addington* were eight managers working for Deere, while the defendant in this case is Deere itself. The eight managers operated within the scope of their employment when they investigated Harrison's sexual misconduct and decided to terminate his employment. See *Addington*, 2011 IL App (3d) 100810, ¶¶ 43-81. Because the managers were acting as agents for Deere, the Illinois Appellate Court observed that Deere "would have been liable for all of the actions taken by its employees" when they terminated Harrison's employment. *Id.* ¶ 51. Additionally, the managers' interests were aligned with Deere's interests because Harrison's conduct "created a risk of workplace violence as well as a risk of financial liability for Deere." *Id.* ¶ 83. The eight managers and Deere shared an interest in preventing such violence and liability. Therefore, because the managers were acting as Deere's

agents and they all had closely aligned interests, *Addington* and this case meet the "identity of parties or their privies" element for res judicata. (Internal quotation marks omitted.) *Deere*, 533 F. App'x at 649.

¶ 37 *DeFlon v. Sawyers*, 2006-NMSC-025, 139 N.M. 637, 137 P.3d 577, relied on by Harrison, actually works against him. In that case, the court found that the named managers were not in privity with their company in its previous litigation with DeFlon because in their case they were being charged with acting outside of the scope of their employment. *Id.* ¶ 10. However, in the instant case, the situation is reversed. In *Addington*, the defendant's managers were found to be acting within the scope of their employment and thus the defendant would have been liable for their actions. *Addington*, 2011 IL App (3d) 100810, ¶¶ 64, 73. Because of that closely aligned interest, there is privity.

¶ 38 Harrison argues that the identified agent in his section 9 cause of action, Martin, is not one of the parties identified in *Addington* and thus privity is severed. However, Harrison apparently failed to actually look at his complaint in *Addington*. Martin is, in fact, a named party in that case. *Addington*, 2011 IL App (3d) 100810.

¶ 39 The Seventh Circuit has already outlined why the parties in *Addington* are in privity with Deere, thus satisfying the second element of *res judicata*.

¶ 40                                     C. Identity of Cause of Action

¶ 41 Though a bit out of the outlined order, the last factor we consider is "identity of cause of action." We find that the facts used in *Addington* and later in *Deere* constitute the same "single group of operative facts" that Harrison is once again using to substantiate his claims. *Addington*, 2011 IL App (3d) 100810; *Deere*, 533 F. App'x at 649.

¶ 42 Illinois's "transactional test" for identity of cause of action for *res judicata* provides that "the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *Baird & Warner, Inc. v. Addison Industrial Park, Inc.*, 70 Ill. App. 3d 59, 64 (1979).

¶ 43 Harrison has essentially conceded that the facts he used in *Addington* are the same facts he is using to establish his rights to relief on his current causes of action. In *Addington*, facts provided by Harrison and Deere concerning the investigation and termination of Harrison's employment were used to determine if the named employees defamed or intentionally interfered with Harrison's employment. *Addington*, 2011 IL App (3d) 100810. Such facts included the premier reason for gathering information about Harrison's personal relationships by Deere's employees, how the information was gathered, what information was gathered, and the management discussion and decisions supported by that information. *Id.* ¶¶ 64, 73-74. The actions used to gather and the decisions based on these facts were determined to have been within the scope of the responsibilities of Deere's employees and not for any discriminatory or retaliatory purposes. *Id.* ¶¶ 73, 75. The factual information was properly acquired for the plaintiff's termination. *Id.* ¶ 74.

¶ 44                                       1. Section 9 of the Act

¶ 45 Harrison claims that Deere violated section 9 of the Act by "gather[ing] or keep[ing] a record of [his] associations[,] *** communications [and] nonemployment activities." 820 ILCS 40/9 (West 2008). He asserts that he was unable to bring this issue in *Addington* because

- 7 -

(1) the court refused to consider his section 9 claim, and (2) he had not received his "right to sue" letter from the Department of Labor prior to the trial court's denial of his motion to extend the time for amendment of pleadings. He effectively concedes that the facts he uses here to argue this issue are the same ones relied on in *Addington*, but he claims that privity is an issue. Harrison's privity argument has already been addressed. This court has already found in *Addington* that Deere would have been liable for the actions of its managers, including Martin, under the statute if a violation had been found. *Addington*, 2011 IL App (3d) 100810, ¶ 51.

¶ 46   Nonetheless, the *Addington* decision was not the reason why Harrison could not assert the alleged violation of section 9 of the Act before the court. *Res judicata* applies not only to issues that were previously litigated but also to those that could have been litigated but were not. *Deere*, 533 F. App'x at 648. Harrison had multiple options for bringing this specific issue before the court during the *Addington* litigation.

¶ 47   The *Addington* court declined to address Harrison's section 9 claim in his appeal because it was not properly before the court. *Addington*, 2011 IL App (3d) 100810, ¶ 73. Harrison had waived the issue by failing to argue it in his opening brief. *Id*. Nonetheless, *res judicata* still applies.

¶ 48   With regard to his "right to sue" letter, Harrison could have asked the *Addington* trial court to stay proceedings until he received his "right to sue" letter. The plaintiff petitioned and was granted the right to amend his complaint several times. It is not unfair to presume neither Harrison nor the trial court would have had a problem with a stay of proceedings pending receipt of the "right to sue" letter. Yet, no stay was requested.

¶ 49   While Harrison does point to the *Addington* court's denial of his motion for leave to amend the case management order on March 26, 2010, he fails to indicate why he needed such an amendment. He acknowledges that at the time he made the motion, he was not aware that the Department of Labor had also issued its "right to sue" letter on that same day. Thus, this would not have been a consideration in the court's denial of the leave to amend the case management order.

¶ 50   Additionally, Harrison could have motioned for leave to file a supplemental amendment or amendments generally. Given the anticipated "right to sue" letter, such amendment would have been in the interest of justice. Harrison, however, chose to attempt to file yet another lawsuit based on the same operative facts in lieu of that or any of the other aforementioned options.

¶ 51                                    2. Invasion of Privacy

¶ 52   The facts Harrison points to in his invasion of privacy argument are the same operative facts that the *Addington* court found to be appropriate actions of Deere's managers. *Addington*, 2011 IL App (3d) 100810, ¶ 74. Harrison argues that questioning other employees directly about his private life was worse than the actions of the defendant in *Johnson v. K mart Corp.*, 311 Ill. App. 3d 573 (2000) (hiring of private detectives to pose as employees to gain information about the private lives of employees). However, these are the same facts and essentially the same argument Harrison used in counts X, XI, and XII in *Addington*. There the court noted that "[O]nce the company was aware of appellant's involvement in this other potentially inappropriate employee related relationship, additional investigation was appropriate." *Addington*, 2011 IL App (3d) 100810, ¶ 74.

### 3. Wrongful Termination

Finally, Harrison's wrongful termination argument is couched in the trial court's finding that he did not sufficiently argue the employer's retaliatory conduct. However, a central finding in *Addington* is that the actions of Deere's managers and Harrison's subsequent firing were not based on a retaliatory motive. *Addington*, 2011 IL App (3d) 100810, ¶¶ 43, 58, 64, 76, 81. The nonemployment activity that Harrison argues should not have been used for his termination is his personal relationships, which the *Addington* court found to be in violation of Deere's company policy and thus the grounds for Harrison's employment termination. *Id.* ¶ 74.

The facts used in *Addington* are the same operative facts the plaintiff is using in the present claims. The purpose of *res judicata* is to prohibit such "duplicative" litigation. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 482 (2008). Thus Harrison's claims of a violation of section 9 of the Act, invasion of privacy, and wrongful termination are barred by *res judicata*.

### III. Denial of Leave to File Another Amended Complaint

We also affirm the trial court's finding that Harrison's motion for leave to file an amended complaint concerning race discrimination is barred by *res judicata*. The standard of review for cases involving denial of a motion for leave to file an amended complaint is abuse of discretion by the trial court, which is found only where no reasonable person would take the view adopted by the trial court. *Keefe-Shea Joint Venture v. City of Evanston*, 364 Ill. App. 3d 48, 61 (2005). We point to the Seventh Circuit's analysis in *Deere* finding "an identity of cause of action." (Internal quotation marks omitted.) *Deere*, 533 F. App'x at 648. The same race discrimination claim attempted here was resolved in *Addington* and barred from relitigation in *Deere*. *Id*. We reject Harrison's attempt to relitigate this issue and affirm the trial court's decision that it cannot be litigated again.

### CONCLUSION

We affirm the trial court's denial of Harrison's request for relief under section 12 of the Act because the issue is without legal consequence and further hold that Harrison's other claims are all barred by *res judicata*.

Affirmed.