2024 IL App (1st) 230186-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
March 11, 2024

No. 1-23-0186

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| STRUCTURE RE-RIGHT, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21-M1-111562 |
| | ) | |
| CHASE BANK USA, N.A., a/k/a Chase Visa, and IVAN | ) | The Honorable |
| STANILA, | ) | John A. Simon, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1     *Held:*   The appellate court affirms the trial court's dismissal of the plaintiff's complaint, as all requirements necessary to apply the doctrine of *res judicata* exist in this case. The appellate court also holds that the trial court did not abuse its discretion by denying the plaintiff leave to file an amended complaint.

¶ 2     The plaintiff, Structure Re-Right, Inc., appeals the trial court's dismissal of its cause of action

against the defendants, Chase Bank USA, N.A., a/k/a Chase Visa (Chase),[1] and Ivan Stanila, on

---

[1] The pleadings reveal that the correct name of this defendant is JPMorgan Chase Bank, N.A. The parties have retained the original name in the caption throughout this case.

grounds of *res judicata*. Structure Re-Right also appeals the trial court's order denying it leave to file an amended complaint, which the trial court did after Structure Re-Right had failed to take advantage of two prior opportunities to amend its complaint. For the following reasons, we affirm.

¶ 3                                   I. BACKGROUND

¶ 4     The verified complaint and exhibits in the record on appeal demonstrate the following facts. In 2016, IS Construction, LLC, hired Potomac Consulting, Inc. (Potomac), to perform roof demolition and other construction work at 8636 South Indiana Avenue in Chicago (subject property). The owner and sole officer of IS Construction is defendant Ivan Stanila. In March 2017, Structure Re-Right agreed to serve as a subcontractor for Potomac to perform roofing and interior demolition work. Around this time, Stanila requested to use his Chase Visa credit card to pay certain charges associated with the work performed by Structure Re-Right. Since Potomac had "no credit-card availability," an oral agreement was made to pay Structure Re-Right directly by credit card in the sum of $18,100. Stanila then authorized his Chase Visa credit card to be charged that sum. Soon after that, Stanila disputed this credit card charge with Chase by stating to Chase that no services had been provided. Chase opened a dispute resolution claim. Chase initially denied Stanila's claim and approved the charges in favor of Structure Re-Right. However, in August 2017, Chase reversed the charges and debited $18,100 from Structure Re-Right's credit account.

¶ 5                                  *A. Potomac Lawsuit*

¶ 6     In September 2017, Potomac filed a lawsuit against IS Construction (Potomac lawsuit). Its complaint alleged that it had completed work on the subject property at a value of $42,500, which IS Construction had refused to pay. Its complaint sought foreclosure of a mechanic's lien, as well as money damages under theories of breach of contract and *quantum meruit*. The filed discovery from the Potomac lawsuit discloses that one issue in that litigation was whether work was

performed by Structure Re-Right on the subject property to substantiate the disputed credit-card charges totaling $18,100. For example, interrogatories were propounded by IS Construction and answered by Potomac as follows:

"3. State whether you or any other person acting on behalf of Potomac ever communicated with any other person, including *** Ivan Stanila *** concerning any of the following: *** b) any meetings, discussions, negotiations and/or agreements relating to Potomac's credit card charges on the credit card supplied by Stanila for work on the Subject Property; ***

ANSWER: *** b) Ivan gave Billings a copy of his ID and credit card to cover the cost of the repairs. Billings was told to utilize the card for the initial down payment and subsequent costs but the card was canceled before the job was completed.

* * *

5. Describe with specificity the basis for the charges attributed to Structure Re-Write [*sic*] Inc. for $9,000 and $9,100 that were charged to the credit card given to Potomac for work on the Subject Property, including whether any work was done by Structure Re-Write on the Subject Property ***.

ANSWER: The basis for the charges attributed to Structure Re-Write was utilized for the purpose of engagement and expenses related to the work performed on the subject property. [Potomac] objects to the remainder of this interrogatory as it is overly broad and not specific to lead to discoverable information."

¶ 7    The mechanic's lien was later quashed, and the Potomac lawsuit proceeded to bench trial on the contract and *quantum meruit* claims on January 25, 2021. Excerpts from the trial transcript indicate that Potomac's manager, Fred Billings, testified that Stanila had paid Potomac by giving

Billings his credit card, which Billings then used to pay its subcontractor, Structure Re-Right, approximately $18,000. Billings testified "that Structure Re-Right accepted the payment in conjunction with my company because they were able to accept credit cards." Billings testified that Stanila had later disputed the credit card charges by falsely claiming that work had not been done. Billings was questioned about two chargeback notices sent to Structure Re-Right for the disputed charges, which invited it to submit a rebuttal to the claim that services had not been rendered; Billings testified that in response to this notice, Structure Re-Right had sent videos to Chase showing that the roofing work had been performed. The trial transcripts also show that Kareem Broughton, the owner of Structure Re-Right, was barred from testifying as a trial witness on behalf of Potomac, due to the untimely disclosure of his testimony.

¶ 8       On February 22, 2021, the trial court entered judgment in the amount of $20,000 in favor of Potomac and against IS Construction on Potomac's claim for *quantum meruit*. Potomac appealed, and this court issued an order affirming the trial court's judgment on February 4, 2022. See *Potomac Consulting, Inc. v. IS Construction, LLC*, 2022 IL App (1st) 210315-U.

¶ 9                                *B. Complaint in this Case*

¶ 10      On June 4, 2021, Structure Re-Right filed its complaint in the present case against Chase and Stanila. Broughton verified the complaint. It alleged that in March 2017, Structure Re-Right had agreed to act as subcontractor for Potomac, which had an agreement to perform re-roofing and other construction services at the subject property. Structure Re-Right was hired as a subcontractor to do a portion of the work, including roofing and interior demolition. Structure Re-Right caused the existing roof to be removed and replaced with a new roof, and it did so in a workmanlike and timely manner. Stanila, "the homeowner," requested the opportunity to pay for charges due Structure Re-Right by way of credit card. Since Potomac "had no credit-card availability," an oral

agreement was made to directly pay Structure Re-Right for professional services rendered via credit card in the sum of $18,100. Stanila then allowed his Chase Visa credit card to be charged for this sum. No objection has ever been received concerning roofing work performed by Structure Re-Right. However, a dispute arose between Stanila and Potomac concerning issues unrelated to the work that Structure Re-Right performed. As a consequence of this dispute, Stanila sought to reverse the charges on his credit card, falsely claiming that no services were provided. Chase opened a dispute-resolution claim. It initially denied Stanila's claims and approved the credit-card charges in favor of Structure Re-Right. However, five months after the transactions, Chase reversed itself and debited Structure Re-Right's credit account for $18,100.

¶ 11    Count I sought damages from Chase under a theory of breach of contract, alleging that "Chase breached its own existing dispute-resolution policies by reversing itself after making an initial determination favorable to Structure and later by debiting Structure five months after the initial charges were made." Count II sought damages from Chase under the tort theory of conversion. It alleged that Structure Re-Right was entitled to and had full possession of $18,100 of credit-card charges received in exchange for roofing and demolition work performed at the subject property, and Chase had wrongfully divested Structure Re-Right of moneys to which it was lawfully entitled.

¶ 12    Count III sought punitive and compensatory damages from Stanila under a theory of fraud. It alleged that Stanila had actual knowledge that Structure Re-Right had performed work, but he deliberately and falsely disputed the credit card charges with Chase by falsely claiming no work had been performed. Finally, count IV was for unjust enrichment against Stanila. That count alleged that "[n]o agreement existed between Structure and Stanila," but it would be unjust and inequitable to allow him to reap a windfall from services performed by Structure Re-Right.

¶ 13                            *C. Motions to Dismiss*

¶ 14        Stanila filed a motion to dismiss the present cause of action on grounds of *res judicata*. Stanila argued that the claim brought by Structure Re-Right in the present case arose from the same group of operative facts as the Potomac lawsuit, that an identity of interests existed between Potomac and Structure Re-Right with respect to those claims, and that the money Structure Re-Right was seeking here was subsumed by the $20,000 judgment obtained by Potomac in that case, which was a final judgment. Chase also filed a motion to dismiss in which it adopted and incorporated Stanila's motion to dismiss, and Chase further argued that the claim against it for conversion failed based on the absence of any allegation that it converted funds for its own use.

¶ 15        Structure Re-Right filed responses to these motions to dismiss. First, it argued that the motions should be denied for the reason that the defendants had supported their arguments only by appending exhibits instead of sworn affidavits. Second, it disputed that an identity of cause of action existed between its present claims and the Potomac litigation, as well as that it was in privity with Potomac for purposes of *res judicata*. As to both of these elements, Structure Re-Right argued that, although it initially agreed to act only as a subcontractor for Potomac, intervening events led to Structure Re-Right and Stanila entering into a new and separate agreement for Stanila to pay Structure Re-Right for its work directly via credit card in the sum of $18,100. Structure Re-Right argued that its claims in the present case were based only on this second, subsequent agreement. In its response brief, Structure Re-Right did not dispute the existence of a final judgment in the Potomac lawsuit.

¶ 16        Both defendants filed reply briefs. Stanila argued that Structure's statement that it had a direct agreement with Stanila was contradicted by the allegations of its verified complaint, which alleged that no agreement existed between Stanila and Structure Re-Right. Also attached to its reply brief was an affidavit by Stanila's attorney, attesting that he had represented Stanila and IS Construction

in the Potomac lawsuit and that the exhibits attached to Stanila's original motion to dismiss were true and correct copies of pleadings, discovery responses, and orders from that case. Partial transcripts from the bench trial in the Potomac lawsuit were also attached and certified by the affidavit of Stanila's counsel.

¶ 17    Structure Re-Right next filed a motion to strike the affidavit of Stanila's counsel attached to his reply brief, as well as the exhibits and argument substantiated by it. Included within that motion was an alternative supplemental reply, in which it argued that no final judgment existed in the Potomac litigation because the trial court's judgment was then pending on appeal.

¶ 18    On February 7, 2022, the trial court granted the motions to dismiss by both Stanila and Chase without prejudice. The trial court granted Structure Re-Right 28 days, until March 7, 2022, to file an amended complaint. The trial court's written order reflects that it heard argument that day, but it does not indicate any basis for the dismissal. No transcript or bystander's report from this hearing is included in the record. The written order also states that Structure Re-Right's motion to strike the affidavit of Stanila's counsel was heard that day, but it reflects no ruling on that motion.

¶ 19    Rather than filing an amended complaint, a motion for reconsideration was filed by Structure Re-Right on March 4, 2022. First, it argued that the failure of Stanila and Chase to support their motions with affidavits mandated the denial of their motions. Second, it argued that the operative date for determining the existence of a final judgment for purposes of *res judicata* was when the motion to dismiss was filed; accordingly, the fact that the appellate court issued its order resolving the appeal in the Potomac litigation prior to the trial court's ruling should not have warranted the granting of the motion.

¶ 20    Stanila and Chase both filed response briefs by March 22, 2022. No further action was taken on the matter until July 26, 2022, when the trial court allowed counsel for Structure Re-Right to

withdraw its appearance. The motion for reconsideration was also withdrawn without prejudice. The case was continued for status to August 23, 2022. The bystander's report from the hearing of December 28, 2022, indicates that, at the status hearing of August 23, 2022, new counsel was present for Structure Re-Right and was given until September 16, 2022, to determine whether to proceed with prior counsel's motion for reconsideration or to file an amended complaint. The bystander's report also indicates that, on September 16, 2022, new counsel informed the court that Structure Re-Right wished to proceed on the motion for reconsideration instead of seeking leave to amend. Structure Re-Right re-noticed the motion for reconsideration, and it filed a reply brief on October 5, 2022. Hearing on the motion was scheduled for December 28, 2022.

¶ 21    On December 22, 2022, Structure Re-Right filed a motion to withdraw the motion for reconsideration and for leave to file a first amended complaint. On December 28, 2022, the trial court denied this latter motion, denied the motion for reconsideration on the merits, and dismissed this cause of action with prejudice. The bystander's report sets forth the trial court's reasoning for these rulings as follows: (1) all of the court orders and certified transcripts at issue were documents of which the trial court could take judicial notice, even in the absence of an affidavit from Stanila's counsel, (2) the appellate court order in the Potomac lawsuit was now indisputably final and not subject to appeal, (3) new counsel for Structure Re-Right had requested to complete the briefing and proceed on prior counsel's motion for reconsideration instead of seeking leave to amend when given the opportunity on September 16, 2022, (4) the proposed amended complaint was untimely and not substantively different from the original verified complaint, as it related to the relationship between Potomac and Structure Re-Right, and (5) even setting aside *res judicata*, the proposed claims against Chase were not viable as a matter of law. This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23    We begin our analysis by recognizing that this case is before the appellate court in an unusual posture. All substantive trial court rulings that Structure Re-Right is challenging on appeal occurred in the context of the dismissal of the complaint without prejudice and granting leave to file an amended complaint within 28 days. Ordinarily, orders dismissing a complaint without prejudice and allowing leave to amend are interlocutory, not final or appealable. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 25. However, Structure Re-Right did not file an amended complaint when the trial court allowed it to do so. Moreover, it did not expressly elect to stand on its original complaint and obtain an order dismissing it with prejudice, which would have resulted in a final, appealable judgment. See *Smith v. Central Illinois Regional Airport*, 207 Ill. 2d 578, 588 (2003). Instead, it filed a motion for reconsideration that raised only two arguments: (1) that the defendants' failure to support their motions by affidavit mandated denial of their motions, and (2) that the *res judicata* element of a final judgment did not exist. Further, despite the trial court offering it a second opportunity to file an amended compliant upon substitution of counsel, Structure Re-Right elected to proceed to ruling on the motion to reconsideration (albeit reversing this position at the last moment). The trial court then denied the motion for reconsideration, denied leave to file an amended complaint, and dismissed the matter with prejudice. Structure Re-Right's appeal now raises additional arguments beyond the two it raised in the motion for reconsideration. We consider these arguments as presented, but we point out that the substantive *res judicata* arguments raised here were addressed by the trial court only in the context of an interlocutory ruling.

¶ 24    Structure Re-Right's preliminary argument is that the trial court should have denied the motions to dismiss filed by Stanila and Chase because, despite relying on grounds that did not appear on the face of the complaint, the motions were not supported by affidavit. Structure Re-

Right relies upon the provision of section 2-619(a) of the Code of Civil Procedure that, if the grounds upon which involuntary dismissal is sought "do not appear on the face of the pleading attacked the motion shall be supported by affidavit." 735 ILCS 5/2-619(a) (West 2020). Here, the defendants sought involuntary dismissal under section 2-619(a)(4) on the grounds "[t]hat the cause of action is barred by a prior judgment," *i.e.*, *res judicata*. *Id.* § 2-619(a)(4).

¶ 25     The record does not disclose the precise view that the trial court took of this argument concerning affidavits when it initially dismissed Structure Re-Right's complaint without prejudice and granted it leave to file an amended complaint. The bystander's report from the later hearing on the motion for reconsideration indicates that the trial court stated that the exhibits attached to the motion were court orders and certified transcripts of which it could take judicial notice even in the absence of an affidavit. Case law provides that materials of an evidentiary nature other than affidavits may be considered in support of a motion under section 2-619. See *Kedzie and 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). Also, it is proper for a trial court evaluating such a motion to "take judicial notice of facts contained in public records where such notice will aid in the efficient disposition of the case." *Advocate Health & Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755, 759 (2004). Judicial notice may be taken of public documents included in the court's records. *Curtis v. Lofy*, 394 Ill. App. 3d 170, 172 (2009) (taking judicial notice of entire record from prior adjudication to evaluate *res judicata* argument); accord *People v. Ernest*, 141 Ill. 2d 412, 428 (1990) (court may take judicial notice of record and trial transcripts from underlying litigation).

¶ 26     More significantly, however, we note that when Stanila was confronted with this argument in the trial court, he attempted to remedy any deficiency in his motion by attaching an affidavit to his reply brief. That affidavit, which was by the attorney who served as trial counsel for both IS

Construction and Stanila in the Potomac lawsuit, attested that the exhibits attached to the initial motion to dismiss were true and correct copies of the filed pleadings, discovery responses, and orders from the Potomac lawsuit. The affidavit also made the same certification for additional trial transcripts and orders that were attached to the reply brief.

¶ 27    Structure Re-Right filed a motion to strike this affidavit, the new exhibits which it purported to substantiate, and "all argument contained within the reply and derived from those exhibits also." The order of February 7, 2022, states that Structure Re-Right's motion to strike was heard that day, but the order reflects no ruling on that motion. It is the responsibility of a party that files a motion to request a ruling on it from the trial judge, and the failure to obtain a ruling from the trial court will not be interpreted as a denial of the motion. *Mortgage Electronic Systems v. Gipson*, 379 Ill. App. 3d 622, 628 (2008). Rather, absent circumstances indicating otherwise, the absence of a ruling results in a presumption that the motion was waived or abandoned by the moving party. *Id.*; *Prather v. McGrady*, 261 Ill. App. 3d 880, 885 (1994). Such a presumption is warranted here by the fact that, if the trial court had been pressed to make such a ruling, it could have allowed a late filing of Stanila's affidavit within its discretion or taken judicial notice of public court records as discussed above. Accordingly, we reject Structure Re-Right's argument that the trial court erred in failing to deny the motions to dismiss on the basis that the grounds for dismissal were not supported by affidavit.

¶ 28    On the merits, Structure Re-Right's argument is that *res judicata* does not apply to bar it from pursuing the present cause of action against Stanila and Chase. Whether an action is barred by *res judicata* is a question of law that this court reviews *de novo*. *Ward v. Decatur Memorial Hospital*, 2019 IL 123937, ¶ 44. *Res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their

privies on the same cause of action. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). Its bar extends to all matters that were offered to sustain or defeat the claim in the first action, as well as to all matters that could have been offered for that purpose. *Arvia v. Madigan*, 209 Ill. 2d 520, 533 (2004). It thus promotes judicial economy by preventing repetitive litigation and protects parties from bearing the unjust burden of relitigating essentially the same case. *Id.* Three requirements must be satisfied for *res judicata* to apply: (1) that a final judgment has been rendered on the merits by a court of competent jurisdiction, (2) that an identity of cause of action exists, and (3) that the parties or their privies are identical in both actions. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008).

¶ 29    Structure Re-Right challenges the *res judicata* elements of identity of cause of action and identity of parties or privies. Initially, Structure Re-Right also raised a challenge to the existence of a final judgment on the merits in the Potomac lawsuit. However, in its appellate reply brief, Structure Re-Right "concedes that there was a final judgment." We agree also that a final judgment on the merits was rendered in the Potomac lawsuit, given that the case proceeded to verdict in the bench trial, which was affirmed on appeal.

¶ 30    The application of *res judicata* in this case requires that an identity of cause of action exist between this case and the Potomac lawsuit. This issue is governed by the "transactional test," which provides that "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998). Pursuant to this test, claims may be "considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." *Id.* "Under this approach, a claim is viewed in 'factual terms' and considered 'coterminous with the

transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; *** and regardless of the variations in the evidence needed to support the theories or rights.' " *Id.* at 309 (quoting Restatement (Second) of Judgments § 24, cmt. a, at 197 (1982)).

¶ 31　　As to this element, Structure Re-Right argues that its present claims do not arise from the same group of operative facts as did the claims in the Potomac lawsuit. It argues that, although the claims in both cases involved the same property, they arise from different agreements. It contends that the claims in the Potomac lawsuit arose out of an alleged agreement between Potomac and IS Construction. By contrast, it argues, the claims in this case arise out of a separate agreement that Structure Re-Right and Stanila entered into after the initial agreement between Potomac and IS Construction. According to Structure Re-Right, this separate agreement was that Structure Re-Right would perform roofing and demolition work at the subject property in consideration for payment of $18,100, which would be charged by Structure Re-Right to Stanila's credit card.

¶ 32　　We reject this argument by Structure Re-Right. Applying the transactional test, it is evident that the claims in the present case arise out of the same operative facts as the claims in the Potomac lawsuit. In other words, the question common to both cases is whether Stanila or his company owed $18,100 for roofing work by Structure Re-Right at the subject property, which was initially charged to his credit card but later charged back after Stanila disputed that work had not been performed. The Potomac lawsuit may have involved more issues than this, but the discovery and trial testimony demonstrates that this was clearly one issue in the case. There, Potomac, as the general contractor, was seeking recovery for work performed on the subject property from IS Construction, the party with which it asserted it had a contract. Potomac's manager, Fred Billings, testified that Stanila had asked to pay for the work by giving Billings his credit card. Potomac

lacked the ability to process credit card payments, but Structure Re-Right had the ability to do so. Thus, Billings testified that Potomac paid Structure Re-Right, as its subcontractor, the amount of $18,100 by having Structure Re-Right run Stanila's credit card directly for that amount. He testified that Stanila had later disputed the charges totaling $18,100 by claiming to his credit card company that no roofing work had been done. Billings was questioned about the chargeback notices sent to Structure Re-Right for the disputed charges, and he testified that Structure Re-Right had responded to Chase, by sending videos showing that the roofing work had been performed. We assume that some further evidence would have been presented on these points if the trial court had not barred Potomac from calling the owner of Structure Re-Right as a witness at trial due to Potomac's untimely disclosure of his testimony.

¶ 33    Structure Re-Right's attempt to cast this transaction as two separate agreements is unavailing. First, its allegations that a separate agreement existed are wholly conclusory, in its original complaint, its proposed amended complaint, and its briefs in this court. Its allegations that it had a separate contract with Stanila are undermined by the fact that its only theories of recovery against Stanila are fraud and unjust enrichment, as opposed to actual contract-based theories of liability. Moreover, even if Stanila agreed that Structure Re-Right could be paid for its roofing work by running his credit card directly, such agreement would still be part of the same group of operative facts from which the claims in the Potomac lawsuit arose. Accordingly, we find that identity of cause of action is present in this case.

¶ 34    The third requirement of *res judicata* is that the parties or their privies be identical in both actions. Structure Re-Right argues that this element is not satisfied because it was not a party to the Potomac lawsuit and it is not in privity with Potomac. It argues that it was not in privity with Potomac because (1) neither company is a "representative" of the other, such as a trustee, executor,

or class representative, (2) neither is vicariously liable for the other, as both companies are independent and do not have a principal-agent relationship, and (3) neither is a successor in interest to property of the other.

¶ 35    We find that the limited view of privity advanced by Structure Re-Right is too narrow. Parties to two actions do not need to be identical to be considered the same for purposes of applying *res judicata*. *A&R Janitorial v. Pepper Construction Co.*, 2018 IL 123220, ¶ 19. Rather, a party to the subsequent lawsuit may be bound by a prior judgment where it is in privity with one of the parties to that prior lawsuit. *Agolf, LLC v. Village of Arlington Heights*, 409 Ill. App. 3d 211, 220 (2011). Privity exists between parties who "adequately represent the same legal interests." (Internal quotation marks omitted.) *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992). It is "the identity of interests" that controls in determining whether privity exists. *Id.*; *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 50.

¶ 36    We conclude that privity exists under the facts of this case. Potomac's overarching legal interest in the Potomac lawsuit was to recover money from Stanila's company for roofing demolition and other construction work performed on the subject property. One aspect of its case involved proving that roofing work had been performed by Structure Re-Right and that Stanila's company had either breached the contract by not paying for it or knowingly accepted the benefits of that work without paying for it. Again, part of the evidence in that case was that Stanila had initially authorized a credit-card payment that was processed by Structure Re-Right for $18,100, but he then disputed whether work had been done to substantiate charges in that amount. Accordingly, Potomac was fully incentivized to establish that roofing work had been performed by Structure Re-Right to substantiate the processed charges and that Stanila's disputing of it with Chase was evidence that his company had breached the contract. This is essentially the same legal

interest that Structure Re-Right is seeking to advance in this case: the recovery of $18,100 representing payment for roofing work that it alleges it performed at the subject property, which was taken away from it through an allegedly wrongful credit-card chargeback. As Structure Re-Right's legal interests in this case are identical to the interests that were adequately advanced by Potomac in the prior litigation, we find that Structure Re-Right and Potomac are in privity for purposes of establishing this element of *res judicata*.

¶ 37    For the first time in its appellate reply brief, Structure Re-Right argues that Chase is not entitled to invoke the bar of *res judicata* because Chase was not a party to the Potomac lawsuit. All indications that we find in the record suggest that *res judicata* was the basis upon which the trial court granted Chase's motion to dismiss (although the parties also brief the issue of whether conversion was adequately pled). Despite the trial court's ruling on this basis, our review of the trial court record and Structure Re-Right's opening brief on appeal indicates that it never disputed Chase's right to invoke *res judicata* on the basis that it was not a party to the Potomac lawsuit.

¶ 38    In our view, the question of whether a party in Chase's position can invoke *res judicata* in this context is a potentially complex legal issue. Structure Re-Right's failure to raise it at a time when Chase could respond to it and the trial court could rule on it results in forfeiture. Generally, arguments not raised before the trial court are forfeited and cannot be raised for the first time on appeal. *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15. Forfeiture is also warranted by Structure Re-Right's raising the argument only in its reply brief. Ill. S. Ct. R. 341(h)(7) (Oct. 1, 2020) ("Points not argued [in an appellant's opening brief] are forfeited and shall not be raised in the reply brief"); *McGinley Partners, LLC v. Royalty Properties, LLC*, 2018 IL App (1st) 172976, ¶ 26 ("It is well settled that a party may not raise an issue for the first time in its reply brief."). Finally, its argument on this point consists of one short paragraph that lacks any discussion of the argument

or citation to authority, and such arguments do not merit consideration. *Burrell v. Village of Sauk Village*, 2017 IL App (1st) 163392, ¶ 20.

¶ 39    Structure Re-Right also argues on appeal that its complaint adequately pled a cause of action for the tort of conversion against Chase. However, as stated, we find no indication in the record that this, as opposed to *res judicata*, was the basis upon which the trial ruled. As we have affirmed the trial court's order dismissing the complaint on the basis of *res judicata*, we have no reason to address whether its count for conversion against Chase stated a cause of action.

¶ 40    Finally, Structure Re-Right argues that the trial court erred in denying it leave to file an amended complaint. The decision to grant a motion to amend pleadings is within the discretion of the trial court, and a reviewing court will not reverse that decision absent an abuse of discretion. *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 69. To determine whether a trial court's denial of a party's motion to amend constituted an abuse of discretion, this court considers (1) whether the proposed amendment would cure the defective pleading, (2) whether it would surprise or prejudice the opposing party, (3) whether it was timely filed, and (4) whether the moving party had previous opportunities to amend. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 432 (1999).

¶ 41    In this case, the record reflects that the trial court gave Structure Re-Right two opportunities to amend its complaint. The first was on February 7, 2022, following dismissal of the complaint without prejudice, and the second was on August 23, 2022, upon substitution of counsel. Structure Re-Right rejected both of these opportunities and decided instead to pursue a motion for reconsideration of the original complaint's dismissal. In light of these earlier tactical decisions by Structure Re-Right, the trial court did not abuse its discretion when it declined to grant a further opportunity to amend the complaint upon denial of the motion for reconsideration. This is

particularly true given the trial court's determination that the proposed amended complaint was substantively no different than the original complaint. We have reviewed the proposed amended complaint, and at best it adds a few conclusory allegations that a separate agreement was made when Stanila agreed that Structure Re-Right could be paid for its roofing work by running his credit card. Moreover, Structure Re-Right's appellate brief includes no argument about how the proposed amended complaint would overcome the bar of *res judicata*. We conclude that the proposed amended complaint does not overcome *res judicata*, and no error occurred when the trial court denied leave to file it.

¶ 42                                            III. CONCLUSION

¶ 43        For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 44        Affirmed.